## AMAZIAH MAYO vs. CITY OF SPRINGFIELD.
## CITY OF SPRINGFIELD vs. AMAZIAH MAYO.

Hampden. Sept. 25. — Oct. 18, 1883. FIELD & W. ALLEN, JJ., absent.

If a city lays out a street of a certain width, at a grade higher than that of the adjoining land, the owner of the adjoining land may maintain an action of tort against the city for damages caused to his land by the act of the agents and servants of the city in placing part of the embankment necessary to support the street upon his land.

THE FIRST CASE was an action of tort for breaking and entering the plaintiff's close on the southerly side of Essex Street in Springfield, and depositing a large quantity of earth thereon.

THE SECOND CASE was an action of tort for carelessly and maliciously digging away the earth that constituted the embankment upon which Essex Street is constructed, and causing the street to fall down.

The cases were submitted to the Superior Court, and, after judgment for the defendant in each case, to this court, on appeal, on agreed facts, in substance as follows:

Essex Street is a public street, running from Main Street to Chestnut Street, in the city of Springfield. It was laid out, forty-one feet wide, in 1857, and its present grade was established by the city council of said city, in 1868. In 1874, a sidewalk six feet wide was ordered by the city council, and the street was then worked up to the established grade, its entire width, and the sidewalk was built in pursuance of said order. Mayo owns, and has owned since 1868, a lot on the south side of said street, about one hundred and ninety-six feet on Essex Street, and bounded easterly by Chestnut Street, thus lying in the angle made by Essex Street and Chestnut Street. In the natural condition of the land across which Essex Street was laid, and before it was graded in 1874, there was an abrupt or steep bank, about twenty feet high, at the junction of Essex Street with Chestnut Street, the latter being about that distance higher than the land across which the former was laid at that point. This bank sloped off from Chestnut Street at a natural slope of about a foot and a half to two feet horizontal, to one foot vertical distance. This condition of the land had not been changed until the sidewalk was ordered and the street worked up to grade in 1874; and, until said time, Mayo's land was about on the same level with Essex Street, and was available quite up to the line of the street for such use as he made of it, it being fenced and used for a pasture.

In working Essex Street up to its established grade, and thereby making the necessary approach to Chestnut Street in pursuance of said order, the servants and agents employed by the city to do said grading, and acting under the authority and direction of the city, dumped large quantities of earth upon Essex Street, and brought the street up to the required grade its entire width, and about one foot in addition thereto on the side of Mayo's land, but not farther than necessary to sustain

the sidewalk upon the established line of the street as the work was done. No bank wall was built or other means used by the city to keep the earth from sloping off from the street on to Mayo's land, but it was allowed to form a natural slope from the street down on to said land, covering it a distance of not less than from five to fifteen feet beyond the line of said street, according to the height thereof. Mayo did not assent to this use of his land.

This slope was about one foot and a half to two feet horizontal, to one foot vertical distance, and so remained until some time in April, 1882, when Mayo dug away said slope or embankment to within not less than one foot from the line of the street, thereby causing portions of Essex Street and the sidewalk resting thereon to slide and cave off, he using no precautions to protect or preserve the street and sidewalk, or to prevent the sliding off and caving in of the same. The city is required by law to keep and maintain Essex Street in repair. The ordinance of said city concerning the building and maintaining of sidewalks requires the abutter to pay the entire expense thereof.

If either action could be maintained, the same was to be referred to an assessor, to find the amount of damages.

*A. M. Copeland*, for Mayo.

*T. M. Brown*, for Springfield.

C. ALLEN, J. The only question in these cases is whether it was lawful to build the street in such a manner that the embankment would extend upon and occupy the land of Mayo, outside of the limits of the street as laid out. If this was lawful, the city is entitled to prevail in both cases; if unlawful, it is not disputed by the city that Mayo might properly remove the earth put upon his land, and maintain an action against the city for the trespass in placing it there.

The statutes of the Commonwealth provide that, when highways or town ways are laid out, a description of the location and bounds thereof, within the limits of the towns in which they lie, shall be transmitted to the town clerks and recorded in a book kept for that purpose. Gen. Sts. c. 43, §§ 13, 74. Pub. Sts. c. 49, §§ 9, 80. The damages to which the owner of land taken for a way is entitled, are necessarily assessed with reference to the location as made.

In *Franklin* v. *Fisk*, 13 Allen, 211, Mr. Justice Chapman said : " When highways are established, they are located by the public authorities with exactness, and the easement of the public, which consists of the right to make them safe and convenient for travellers, and to use them for public travel, does not extend beyond the limits of the location." And again : " Neither his [the surveyor's] office nor the existence of the highway gives him any authority to meddle with land outside the limits of the highway." ·

In *Simonds* v. *Walker*, 100 Mass. 112, a highway was laid out with a location, for its whole length, three rods wide, and " from stone monument No. 8 to stake No. 14 all the land between the location of three rods wide and the Ashburnham road is taken for materials and slope." Mr. Justice Hoar said : " How ' taken ' ? In the only way, most reasonably, in which it could lawfully be taken, — as a part of the road which they were defining. To say that it is taken ' for materials and slope ' is only to give the reason why the road should be wider at that part than elsewhere. It is as if they had said : The whole road is to be three rods wide; and as between monument No. 8 and stake No. 14 it is necessary that it should be wider, to furnish a proper slope for the road bed, and the materials required for its construction, in addition to the three rods there is taken at that place all the land to the Ashburnham road." And again, in an earlier part of the opinion, he said : " The commissioners were laying out a highway, and had no authority to take land beyond the limits of the location."

In the present case, the street as laid out was forty-one feet wide, and the damages for taking land must have been assessed with reference to the determination of the public authorities, that only that width was necessary. Within the located limits, it was competent for them to establish the grade at such height or depth as they pleased; but they were not at liberty to occupy more land than was included in the location. It may be inferred from the agreed statement that the original grade was afterwards changed; but, whether changed or not, it was established in 1874 at a height which required an embankment, and in working the street up to its established grade, no bank wall

was built or other means used by the city to keep the earth from sloping off from the street on to Mayo's land, but it was allowed to form a natural slope from the street down on to said land, covering it at a distance of not less than from five to fifteen feet beyond the line of the street. This was an occupation and appropriation of Mayo's land for which he was not entitled to damages at the time the street was laid out.

It is true that another section of the statutes provides that, " when an owner of land adjoining a highway or town way sustains damage in his property by reason of any raising, lowering, or other act, done for the purpose of repairing such way, he shall have compensation therefor, to be determined by the selectmen or mayor and aldermen," with whom a petition shall be filed for the purpose. Gen. Sts. c. 44, § 19. The city of Springfield contends that under this section Mayo might have filed his petition for damages resulting from the acts of which he complains. But this provision of the statute contemplates only lawful acts done within the limits of the highway as laid out. If in raising or lowering a highway it is necessary also to widen it, by reason of making an embankment or excavation, it is the duty of the public authorities to ascertain and determine how much more land is required for the purpose, in order that the owner of property which is taken for the public use may be informed of the extent to which it is proposed to deprive him of his rights, and may be paid accordingly. The statutes contain ample provisions for this method of procedure. Gen. Sts. c. 43, §§ 1, 6, 9, 13, 65, 68, 71. St. 1868, c. 264. If Mayo sustained any damages by reason of the raising of the grade of the street, within its located limits of forty-one feet in width, his only remedy for such damages was by petition filed with the mayor and aldermen, as provided in the Gen. Sts. c. 44, § 19. But, no provision having been made for taking his land for the purpose of widening the street, and no determination having been made how much of his land was required for that purpose, no remedy was afforded to him by the statutes by petition for an assessment of damages, and the act of using his land for the purpose of extending the embankment upon it must be regarded as unlawful. The incidental remarks of the court in *Mitchell* v. *Bridgewater*, 10 Cush. 411, to which our attention has been called, are not to be

regarded as a judicial determination that, under such circumstances, the owner of land so used would have a remedy by such a petition.

It follows, that, under the agreement of the parties, the first case is to be referred to an assessor, to find the amount of damages, and that, in the second case, judgment is to be entered for the defendant. *Ordered accordingly.*