JOHN MCINTIRE vs. JOHN H. ROBERTS & another.

Suffolk.   March 19, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Personal Injuries — Unguarded Elevator Well near Street.*

An elevator well, in a building bounding on a city street, communicated directly with the sidewalk through an opening five or six feet wide and about ten feet high in the front wall.  The sill of this opening was a stone eighteen inches wide, which did not project beyond the wall, and was raised about three inches above the level of the sidewalk.  While the elevator was being used in hoisting goods unloaded from a wagon standing in the street, the horse attached to the wagon backed it upon the sidewalk, causing travellers thereon to jostle and push one of their number through this opening, then unguarded, into the well, occasioning him injuries.  *Held,* that the occupier of the building was not liable for such injuries.

The St. of 1885, c. 374, § 108, providing for the guarding of elevator openings in the floors of any building in Boston, in which there was an elevator not running in a shaft, was *held* not to apply to elevator openings through the wall of such a building into a street.

TORT for personal injuries occasioned to the plaintiff by falling down an unguarded elevator well in a building on Merrimack Street, a highway in Boston.  Writ dated December 7, 1887. Trial in the Superior Court, before *Sherman,* J., who ordered a verdict for the defendants, and reported the case for the determination of this court, in substance as follows.

There was evidence tending to prove the following facts.  The defendants had occupied the building in question for several years.  The elevator well, in which ran a freight elevator used by the defendants in their business, was in the front part of the building.  An entrance was afforded to this well directly from the street and across the sidewalk through an opening five or six feet wide and about ten feet high cut through the front wall of the building.  The base or sill of this opening was formed by a stone about eighteen inches in width, which sill did not project beyond the front line of the building, and was raised about three inches above the surface of the sidewalk.  On each side of this opening, about two feet and ten inches above the surface of the sill, there was a notch in the wall to support a bar to protect persons on the sidewalk from falling into the

well.  On August 26, 1887, about five o'clock in the afternoon, the sidewalk in front of the building was obstructed by men engaged in unloading iron castings from a wagon backed up against the curbstone, and in carrying them across the sidewalk and piling them against the building preparatory to placing them through this opening upon the freight elevator.  The plaintiff, who was sixty-two years of age and lived in the vicinity, was at the time passing along Merrimack Street on his way to his home.  When the wagon was unloaded, he proceeded to pass by on the sidewalk, and was opposite the opening, which was then unguarded by the bar, when the horse attached to the wagon suddenly backed the wagon upon the sidewalk, forcing against him the persons upon the sidewalk between himself and the wagon, and these persons pushed him towards the defendant's building.  The plaintiff's feet struck against the stone sill of the opening, and he fell down the well into the defendants' cellar, sustaining the injuries.

The plaintiff put in evidence the St. of 1885, c. 374, § 108, relating to the protection of elevator openings in the city of Boston.  The evidence tended to show that the elevator did not run in a shaft.  The jury took a view of the premises.

At the request of the defendants, the judge ruled that, on the evidence, the plaintiff was not entitled to recover, directed a verdict for the defendants, and reported the case for the determination of this court.  If the ruling was correct, the verdict was to stand; otherwise, a new trial was to be ordered.

*J. A. Maxwell & J. D. McLaughlin*, for the plaintiff.

*A. Hemenway*, for the defendants.

FIELD, J.  It is plain that the opening in the wall of the building for access to the elevator from the street was outside the limits of the street, and that the plaintiff did not enter the building by any invitation of the defendants.  The contention is that the defendants were negligent in leaving this opening unguarded.

It is said of the liability of the city in *Alger* v. *Lowell*, 3 Allen, 402, 405:  " The place where the plaintiff fell was indeed outside of the line of the street; but the defect in the street which occasioned the injury was the want of a railing, if one was necessary at that place to make the street safe and convenient for

travellers in the use of ordinary care. And the city would have an undoubted right to erect such a railing, although it might obstruct the entrance to the passageway of an abutter; because no person has a right to an open access to his land, adjoining a street, of such a character as to endanger persons lawfully using the street for purposes of travel."

In *Franklin* v. *Fisk*, 13 Allen, 211, it is said: "When highways are established, they are located by the public authorities with exactness, and the easement of the public, which consists of the right to make them safe and convenient for travellers, and to use them for public travel, does not extend beyond the limits of the location. . . . The right of adjoining proprietors to erect structures upon their land up to the line of the highway is exercised everywhere." See *Mayo* v. *Springfield*, 136 Mass. 10.

If this elevator opening rendered the sidewalk permanently dangerous to travellers, it was undoubtedly the duty of the city of Boston to put up a barrier, and if the defendants removed it they might be liable to travellers who were injured in consequence of its removal; but it has not yet been decided in this Commonwealth that at common law abutters are liable to travellers for injuries received in consequence of excavations made in their land outside the limits of a highway, and *Howland* v. *Vincent*, 10 Met. 371, is a stronger case for the plaintiff than the case at bar. It is argued that that case is opposed to the weight of authority elsewhere, and that a hole outside the limits of a highway, yet so near to it as to make the highway unsafe for travellers, constitutes a public nuisance, and that if a person creates a public nuisance he is liable to individuals for any special damage suffered therefrom. See *Barnes* v. *Ward*, 9 C. B. 392; *Fisher* v. *Prowse*, 2 B. & S. 770; *Hadley* v. *Taylor*, L. R. 1 C. P. 53; *Beck* v. *Carter*, 68 N. Y. 283; *Bond* v. *Smith*, 44 Hun, 219; *Murray* v. *McShane*, 52 Md. 217; *State* v. *Society for establishing Useful Manufactures*, 13 Vroom, 504; *Haughey* v. *Hart*, 62 Iowa, 96.

The occupier of a building who negligently permits a private way leading to it, which is under his control, to be in an unsafe condition by reason of an excavation or embankment so near to it as to make travelling on it dangerous, is liable for injuries

received by any person who is lawfully using the way with due care. *Mellen* v. *Morrill,* 126 Mass. 545. *Oliver* v. *Worcester,* 102 Mass. 489. But abutters on a public way have not control of the way, nor do travellers use a public way by invitation of the abutters.

In this Commonwealth the obligation of a city or town to put up guards against pitfalls which are so near to a highway as to make it unsafe for travellers, is similar to the obligation which it seems is imposed upon abutters by the English law. We are not aware that it has ever been decided here, that excavations made by the owner of land outside the limits of a highway, but so near to it as to make it unsafe for travellers, constitute a public nuisance, for creating or maintaining which the landowner may be punished; or that, in assessing damages for land taken for a highway, any allowance is made to the landowner for the loss of any right to use the land not taken, in the same manner as if a highway had not been laid out. If it be assumed that, when a building abuts upon a street, it is for the authorities of the city or town to determine whether the entrances into the building from the street are so constructed that they may be permitted to remain, — and if it be also assumed that, when entrances are permitted which are constructed so as to be closed when not in use by doors or some other barrier, the occupier of the building is liable in damages to travellers upon the street if the doors are negligently left open or the barrier left down whereby the street becomes unsafe and the travellers are injured, — still we are of opinion that the facts stated in the report do not show, or tend to show, negligence on the part of the defendants. It does not appear that the opening was not constructed so as to be closed with doors, or by a proper barrier, when the elevator was not in use. The stone sill was about three inches above the sidewalk; the opening was but five or six feet wide, and nearly at a right angle with the line of the sidewalk, and the wall of the building was about eighteen inches thick. It was impossible that any traveller using due care in the day time should mistake the opening for a continuation of the sidewalk. The only danger was that a person on the sidewalk might be pushed into the opening, as he might be pushed against the wall of the building, or against or through a window, or against a door. The elevator

at the time of the accident was in use for carrying up the iron castings which were being unloaded from the wagon which had been backed up against the curbstone of the sidewalk. The accident that happened was one that could not reasonably have been anticipated, unless the horse was vicious, or there was negligence in managing him, and it does not appear that the horse belonged to the defendants, or that the persons who were unloading the castings or were in control of the horse were servants of the defendants.

There was at the time of the accident no statute which prescribed the manner in which this opening should be constructed or guarded, for the St. of 1885, c. 374, § 108, does not apply to elevator openings through the wall of a building into a street, and the St. of 1888, c. 367, § 3, had not then been passed. By the terms of the report the                    *Verdict is to stand.*