## THE PENNSYLVANIA STEEL COMPANY et al. *vs.* C. REBECCA WILKINSON.

*Negligence—Rope Lowered Over a Highway During Construction of Overhead Work and Frightening Horse—Prayer Withdrawing Case from Jury as to Two Defendants.*

During the construction of a trestle over a city street, the defendant allowed a rope to hang and swing low across the street in a loop. Plaintiff, driving in a buggy without a top, came to the trestle work, and just as the horse's head neared the rope, it was pulled or swung out towards the horse, which thereby was frightened and ran away, causing the injuries to plaintiff for which this action was brought. There was no evidence as to whether the rope was moved by an employee of the defendant or by a stranger. The horse was shown to have been a safe one and there was no evidence of negligent driving on the part of the plaintiff. *Held*, that the defendant was guilty of negligence in thus allowing the rope to hang in a loop over the public street, on which persons were passing, and so low that a vehicle with a top could not pass under it, and that if the rope was moved at the time of the accident by a stranger that was merely an intervening or concurring cause of the injury and one for which the defendant is responsible, and was not the efficient and independent cause.

If either one of the two defendants in an action is liable a prayer withdrawing the case from the jury as to both is properly rejected.

*Decided March 31st, 1908.*

Two appeals from the Superior Court of Baltimore City, (SHARP, J.), where there was a judgment on verdict for the plaintiff for $2,000.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Thomas H. Robinson* and *Carroll T. Bond* for the Penna. Steel Co., appellant, with whom on the brief was *Joseph W. Chamberlaine*, for the Mayor and City Council of Havre de Grace, appellant.

*John S. Young* and *Howard Bryant* (with whom were *A. Freeborn Brown* and *M. H. Fahey* on the brief), for the appellee.

BURKE, J. delivered the opinion of the Court.

On the 24th day of May, 1905, the Pennsylvania Steel Company, a body corporate, by the consent of the Mayor and City Council of Havre de Grace, a municipal corporation, was engaged in the construction of certain trestle work for the purpose of erecting a bridge or overhead crossing to be used as an approach to the new railroad bridge over the Susquehanna River. This bridge was to be built over Union avenue, a public street or highway of the city of Havre de Grace. On the day mentioned a number of workmen of the Pennsylvania Steel Company, in charge of William H. Dickel as foreman, were engaged in setting up the false work on Union avenue preparatory to the construction of the bridge across that highway. In the morning of that day the plaintiff, who lived about six miles from Havre de Grace, had driven into that city accompanied by a colored woman. The plaintiff was a skillful driver, and was driving a safe horse, which was attached to a light no top wagon, known as a buckboard. In going into town, the plaintiff drove past the place on Union avenue where the men were working in putting up the false work spoken of in the evidence. At a later hour in the day, when she was in the act of passing this work on her return home her horse became frightened and unmanageable, and ran away. Her wagon collided with a cart, and she was thrown out and injured. The nature and extent of her injuries were testified to by the physician who attended her; but it is with the cause, and not with the extent of the injuries, that we are concerned on this appeal.

There is conflict of testimony as to the extent of the construction work at Union avenue at the time of the accident. On the part of the plaintiff it was testified that there were timbers erected on both sides of the street and above the passage way left opened for driving; on the part of the defend-

ants it was testified that there was one upright brace only in place on the right or east side of the drive way as the plaintiff passed out of town, and that there was no structure overhead, or nothing on the west side of the street, except a piece of timber to serve as a brace for another trestle work to be erected on that side. But this conflict in the testimony has no bearing upon the legal questions raised on the record.

The plaintiff brought suit in the Circuit Court for Harford county against the Pennsylvania Steel Company and the Mayor and City Council of Havre de Grace to recover damages for the injuries she sustained. The case was removed to the Superior Court of Baltimore City where it was tried. The trial resulted in a verdict and judgment against both defendants, and they have prosecuted these appeals:

The declaration contains three counts. The first count charged that the Mayor and City Council of Havre de Grace had the charge and control of the streets of that city, and that it and the other defendant, the Pennsylvania Steel Company, negligently obstructed one of the streets of the city, being the street called in the testimony Union avenue, by placing and stretching a large rope, called a hawser, across and over said street from the east to the west side thereof; and in this count the injury she sustained is alleged to have been caused by this rope hanging so low that when the plaintiff was driving along the street, in the exercise of due care "the horse that she was then driving was thereby frightened and made to run away." The second count charged that the defendants negligently obstructed the street by means of a large rope stretched from a high trestle work, or derrick on the east side of the street, and that the trestle work or hawser and derrick were placed there negligently by the defendants. It is alleged in this couut that the injury was caused by reason of said trestle work, derrick and hawser being placed in, near, and across and over the street.

The third count, which is the important one in the declaration as the case comes before us, alleged that the defendants *so negligently managed, controlled and worked said rope or*

*hawser* when the plaintiff was driving her horse and wagon along and over the street and under the rope and hawser, and when in the exercise of due care, as to cause the horse of the plaintiff then being driven by her to become frightened, and which did frighten said horse, causing said horse to become unmanageable, when said horse ran away, and ran into another wagon or team, upsetting the wagon in which the plaintiff was riding, and throwing her violently to the ground whereby she was seriously and permanently injured.

At the conclusion of the testimony offered by each side, the plaintiff submitted four prayers, and the defendant submitted eight prayers for instructions to the jury. The Court granted the plaintiff's third and fourth prayers; but refused her first and second. The Court granted the third, fourth, five and a half, sixth, and seventh prayers of the defendants; but refused their first, second, and fifth. The defendants filed special exceptions to the granting of the plaintiff's first, second, and third prayers. The Court overruled each of the special exceptions. To the action of the Court in granting the plaintiff's third and fourth prayers, and in refusing each of the defendants' special exceptions to the plaintiff's first, second, and third prayers, and in refusing the defendant's first, second, and fifth prayers the defendants excepted. The ruling of the Court on these prayers and on the special exceptions constitute the second bill of exceptions. The record contains one other bill of exceptions taken by the defendants to the admission of certain testimony; but this we understand by the appellant's brief has been abandoned, as it is therein stated that this Court "would not be asked to review any ruling for error in which it might only reverse the judgment with a new trial." The granted fourth prayer of the plaintiff is the usual one on the measure of damages, and was not objected to at the hearing; and we think it is not open to criticism.

It, therefore, appears that the questions we are to deal with arise upon the action of the Court in granting the plaintiff's third prayer, and in overruling the special exceptions thereto, and in refusing the defendant's first, second and fifth prayers.

The plaintiff's third prayer was drawn under the third count of the declaration  It told the jury that if they found from the evidence that on the day of the accident the plaintiff, while in the exercise of due care, was driving a horse and buggy on and over one of the streets of Havre de Grace, one of the defendants, and that a portion of the bed of said street was then occupied by trestle works put up and built by the Pennsylvania Steel Company, the other defendant, and that it was then building and preparing to build additional and other trestle work in the bed of said street, and for that purpose had a rope or ropes stretched across the part of said street left open for travel, which was about twenty feet wide between the trestle work; and that at the time the plaintiff was approaching said trestle work on said street and under the ropes stretched across the street, the rope was not moving, and that when the plaintiff's horse got to the point on the street under or nearly under the rope, the rope was moved, and was made to swing to and fro because of the negligence of the defendant, the Pennsylvania Steel Company, in the management of said work and the handling and moving of the rope across the part of the street left open for travel, over which the plaintiff was driving, causing the horse of the plaintiff to become frightened and unmanageable, and thereby made to run away and collide with a cart as mentioned in the evidence, throwing the plaintiff out on the ground and injuring her, and if they should further find that the plaintiff's horse would not have become frightened and run away, but for the swinging to and fro of said rope at the time it was passing under it; and further find that the defendant, the Mayor and City Council of Havre de Grace, one of the defendants, gave permission and authority to the Steel Company to build said trestle work in the bed of the street, then the plaintiff was entitled to recover.

The defendant's first prayer asked the Court to direct the jury to find their verdict for the defendants, because there was no legally sufficient evidence in the case to entitle the plaintiff to recover under the pleadings and evidence; their second prayer asked the Court to direct a verdict for the defendants,

because there was no legally sufficient evidence to show that the accident complained of was caused solely by any wrongful acts, neglect or defaults of the defendants, their agents, servants, or employees, or either of them, without any negligence on the part of the plaintiff directly contributing thereto; and their fifth prayer asked the Court to tell the jury that if the plaintiff's horse was scared at the movement of a rope, stretched by the servants, agents or employees of the defendant corporation, in the course of their work and for the purposes therefor, across the highway on which the plaintiff was driving; and if the jury are unable to determine from the evidence which has been produced before them, beyond a mere conjecture or surmise, whether the rope was moved, if the jury find it was moved, by one of the agents, servants or employees of the Steel Company, or whether it was moved by a spectator or person in no way connected with the company, then their verdict should be for the defendant, the Pennsylvania Steel Company upon the pleadings and evidence.

It becomes necessary in order to determine the legal questions which arise under these prayers to examine some of the controlling facts disclosed by the record. There are certain sharp and well defined issues of fact presented in the testimony; but, assuming that the Court was right in submitting the case to the jury, these questions of fact were properly left to their consideration under the instructions granted. The testimony on behalf of the plaintiff tended to show that the street was very much narrowed by reason of the work being done at the point where the accident occurred; that the work was being done at that time on the east side of the street, and that to the left or west side there were two or three large timbers lying along the side of the street ready to be taken up on top of the false work; that there was a rope swinging in a loop from this false work over and across the street from east to west; that this rope was hanging so low that a buggy with a top could not pass under it; that the plaintiff would have passed this rope safely, but just as the plaintiff's horse had its head near the rope someone took hold

of the rope and pulled it, swinging it out towards the horse and that this swinging of the rope in the face of the horse caused it to run. At the time the plaintiff's horse approached the rope there were a number of spectators gathered at that point watching the construction; but who pulled, or swung the rope, whether a workman of the Steel Company or a stranger, does not certainly appear. The testimony produced by the plaintiff as to how the accident occurred is denied by the defendants, but that was a question of fact exclusively for the jury.

Assuming the testimony offered in support of the plaintiff's case to be true, as the defendants were bound to do under their prayers to take the case from the jury, they, nevertheless, contend that, as there is no evidence legally sufficient to prove that the servants of the Pennsylvania Steel Company moved the rope, there could be no recovery in this case. Conceding, as we must that there is no evidence to show that the injury was caused in the way alleged in the first and second counts of the declaration, the defendants must stand or fall upon the soundness of their contention above stated, as there is, in our opinion, no evidence of such negligence in law on the part of the plaintiff as would justify the Court on that ground in withdrawing the case from the jury.

It must be admitted that the defendant, the Pennsylvania Steel Company, was guilty of negligence if it suffered or permitted this rope to hang in a loop over the public street in the manner testified to by the plaintiff. This proposition is so clearly self-evident that no authorities need be cited in its support, and its negligence in that respect may be assumed as a postulate in the discussion; but it is supposed by the defendants that neither is liable under the facts offered in evidence by the plaintiff, unless there is found in the evidence legally sufficient proof to show that a servant of the Pennsylvania Steel Company, acting within the scope of his employment, negligently moved the rope and thereby caused the injury. This contention necessarily rests upon the assumption that the causal connection between the defendants' earlier negli-

gence and the injury sustained was broken by the interposition of an independent cause, to which the injury must be directly and immediately attributable, namely, the act of some unknown person in moving, or swinging the rope which caused the horse to run away. But to this proposition we cannot assent, because, under the evidence, the Steel Company was chargeable with the negligence of the person who moved the rope, whether he was in its employ or not. The act of that person, if he were a stranger, must be imputed to the defendant company, as it was at most an intervening cause, and not a sufficient and independent cause by which the defendant would be relieved from responsibility. It was an act so intimately and inseparably connected with the defendants' prior negligence in allowing the rope to overhang the street that the law regards it merely as a concurrent cause of the injury.

It is stated in 21 *Am. & Eng. Ency.*, 490, "that the defendant is liable where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act, or omission, or even it is generally held, if the intervening acts or conditions were of a nature, the happening of which was reasonably to have been anticipated, though they have been acts of the plaintiff himself." In *Wharton on Negligence*, sec. 145, it is stated, that the defendant is not exempt from liability when a negligence subsequent to that of the defendant is the agent by which the defendant's negligence proves injurious, if such subsequent negligence was likely, in the usual and natural order of things, to follow from the defendant's negligence.

The rules stated have been recognized in many cases in England and in this country, and were applied by this Court in the case of the *Baltimore & Potomac Railroad Company* v. *Reaney*, 42 Md. 136, in which it is said, "that no wrong doer ought to be allowed to apportion, or qualify his own wrong; and that, as the loss actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense that there was a more immediate cause

of the loss, if that cause was put into operation by his own wrongful act. In *Baltimore City Passenger Railway Company* v. *Kemp and wife*, 61 Md. 81, JUDGE ALVEY, speaking for the Court, said: "The rule is stated by *Addison*, in his work *on Torts* (3 ed.), p. 5, with as much clearness and precision as will be found in any other text writer, and he states the rule to be, "that whoever does an illegal act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervening agency of others, provided that the intervening agents were *set in motion* by the primary wrong doer, or provided their acts causing the damage were the necessary or legal and natural consequence of the original wrongful act."

The plaintiff's evidence brings this case fully within these principles. The act of jerking, or swinging the rope was set in motion by the negligence of the Steel Company, and the movement of the rope, under the circumstances, was plainly induced by the wrongful act of the defendant company in permitting it to hang over the highway in the position described by witnesses, and, therefore, upon the principle stated, it is liable to the plaintiff for such injury as she may have sustained in consequence of the negligent handling, or movement of the rope. The plaintiff's third prayer can be safely rested upon this legal proposition, and was properly granted, as there was ample evidence to support the hypothesis of fact stated in the prayer. It was right, under the circumstances of the case, to have left the question of the plaintiff's negligence, and that of the person who is alleged to have moved the rope to the jury.

The question of remote and proximate cause is often perplexing and embarrassing, and at times very difficult to determine. Cases may illustrate the question; but the Courts have never laid down any hard and fast rule upon the subject. It is to be decided upon common sense principles in the light of the surrounding facts and circumstances. "The true rule is, that what is proximate cause of an injury is ordinarily a ques-

tion for the jury. It is not a question of science, or legal
knowledge. It is to be determined as a fact, in view of the cir-
cumstances of fact attending it. The primary cause of a disaster,
though it may operate through successive instruments, as an
article at the end of a chain may be moved by a force applied
at the other end, that force being the proximate cause of the
movement, or as in the oft cited case of the squib thrown in
the market place." *The Milwaukee & St. Paul Railway Com-
pany* v. *Kellogg*, 94 U. S. 469.

The case of the *District of Columbia* v. *Dempsey*,
13 Appeal Cases, 533, is one similar in its facts
and identical in its principle with the case in hand.
There a telephone wire had become broken during a
storm, and was negligently allowed to be suspended from
a tree overhanging the street. A few minutes before the acci-
dent a stranger to the District and to the telephone company
fastened the wire to an adjacent tree so as to form a loop in
which the plaintiff was caught and injured. Suit was brought
against the District and the Telephone Company. The de-
fendants contended that although there was negligence on
their part in permitting the wire to remain suspended in the
street, they were not liable if the injury was produced directly
in consequence of the act of some third person in tying the
wire to a tree, thus forming a loop. But the Court rejected
this contention, and held both defendants liable, saying that
the position taken was not in accordance with reason, and
was not the law. It held that the act of the stranger,
under the facts stated, was not the interposition of an inde-
pendent cause which would relieve the defendant, but was
the addition of a further and concurrent cause.

The defendants first and second prayers, as we have seen,
asked the Court to withdraw the case from the jury as to
both defendants, and if it were conceded that the Mayor and
City Council of Havre de Grace was not responsible, it would
have been error to have directed a verdict in favor of both de-
fendants, if either were liable. *Vonderhorst* v. *Amhrine*, 98
Md. 406. Finding no error in the rulings of the Court, the
judgment will be affirmed.

*Judgment affirmed with costs above and below.*