STATE OF MARYLAND, Use of Lorenz Schiller, *v.* HECHT COMPANY.

[No. 36, October Term, 1933.]

*Decided December 6th, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Digges, Parke, and Sloan, JJ.

*Abram C. Joseph,* with whom were *Daniel C. Joseph* and *William M. Ballou* on the brief, for the appellant.

*William L. Marbury, Jr.,* with whom were *Fendall Marbury, L. Wethered Barroll,* and *Marbury, Gosnell & Williams,* on the brief, for the appellee.

Adkins, J., delivered the opinion of the Court.

This is a suit, under article 67 of the Code as amended, by the father for damages for the death of an infant child resulting from the alleged negligence of the defendant in failing to provide proper safeguards to an elevator shaft into which the child fell, it being killed.

The little boy, aged fourteen, was a member of an "avia-

418

tion class," conducted by the Hecht Company, trading as "The Hub", on the fourth floor of a building known as Warehouse No. 2, situated in the rear of the building known as No. 22 East Baltimore Street in the City of Baltimore. The company also occupied part of another building known as Warehouse No. 4, adjoining Warehouse No. 2. Warehouse No. 4, except the basement or ground floor, was used for storage purposes in connection with the company's main building at the corner of Baltimore and Charles Streets. The entrance to Warehouse No. 4 is on Bank Lane, an alley in the rear, by steps, ten to fifteen, leading to what is described as the landing or second floor, the company occupying the second, third, fourth and fifth floors. On reaching the landing, to the left, about three or four feet from the entrance, is a lavatory, and next to that is the elevator shaft; adjoining that are inclosed stairs leading to the third floor. The elevator shaft projects out into the room some inches beyond the lavatory and the stairs. Ordinance No. 472 of the Mayor and City Council of Baltimore (City Code of 1927) was offered in evidence, by which it is provided that semi-automatic gates or doors of elevators shall be provided with a locking device, which will prevent the normal opening of the gate or door unless the car floor is at or near the landing. Evidence was offered by plaintiff tending to prove that at about 10 o'clock of the morning of the accident the deceased came to the alteration room of defendant and asked an employee for a box in which to put the wood the deceased used for making model airplanes; that said employee was told by his superior in that department he could not give any boxes away, and that said superior sent the boy over to No. 4 Warehouse; that the said employee went to said warehouse the day before to get boxes; that there was a dim light in the toilet or lavatory, but no light in front of the elevator —the light, the witness said "was blown out"; that, on the occasion of the visit of said employee, the elevator door was up, and the lock on it was broken, and the door would not come down automatically, and that he notified the janitor.

A companion of the deceased testified that the employee who directed the deceased to Warehouse No. 4 was the same person who on the previous Saturday sent witness to said warehouse when he asked for a box; that witness saw deceased walk into the warehouse, and two or three minutes later he heard the ambulance bell and saw the ambulance stop at the warehouse. An employee of defendant, working on the fourth floor of the warehouse, heard a bumping on the elevator shaft, and, on looking for the cause, was told that a boy had fallen in the shaft. This employee, with another, brought the elevator down from the fifth floor, where it was at the time of the accident, and, on investigation, they found the boy in the basement at the bottom of the shaft. He was carried in an ambulance to Mercy Hospital. The father of the boy was called to the hospital, and when he arrived there the boy was dead. The father testified that he went at once to the warehouse; that it was very dark on the whole floor; that there was a night light in the toilet, the door of which was open only half way; that next to the toilet was the elevator; that the elevator gate was up; that the bulb of the light in front of the elevator was burned out. A city elevator inspector testified that he examined the elevator two days after the accident; that the second floor gate had a defective lock; that the lock is supposed to hold the gate down until the elevator comes to its landing and does not release before that, and then the gate can be raised up; but that, when he examined it, anybody could push the gate up when the elevator was not at the landing; that if the gate was up, and the elevator was gone, the gate would not come down automatically; it had to be pulled down.

The testimony as to the amount of light in the room and the visibility of the shaft was conflicting; also as to whether the gate was seen to be up before and after the accident when the elevator was not at the landing.

Only one witness professed to have seen the actual happening of the accident. This witness, testifying for the defendant, said he had gone up three or four steps of the stairs

leading to the second floor and saw young Schiller in the act of raising the elevator gate; the witness called out, "Hey, boy" and the boy walked right into the shaft; that he had the gate about three feet off the floor when witness called to him; that witness, from where he was standing, could not actually see the elevator door the boy was holding, but knew he was holding it, "because I went over there many a time and I know there was an elevator there * * * and a gate there also"; and that the boy was where the gate was located.

At the conclusion of the testimony the court granted defendant's prayer instructing the jury that there was no evidence legally sufficient to entitle the plaintiff to recover, and judgment was entered on a verdict for the defendant.

· Several other exceptions were reserved which will be considered later. We think the case should have been submitted to the jury.

The failure to observe the provision of the ordinance in regard to safety locks was *prima facie* evidence of negligence, if it resulted in injury to one who was rightfully on the premises. This has been so often held, notably in regard to right of way statutes, that it is unnecessary to cite authorities. We said in *State v. Longeley,* 161 Md. 563, 158 A. 6, that before a right of action could arise from such violation, it must be shown that the violation of the ordinance was the proximate cause of the injury, and that the person injured at the time of the accident had the right to be on the premises and was not a trespasser.

It is apparent, we think, from the testimony, that the unfortunate boy was an invitee and not a trespasser. According to plaintiff's testimony he was not on any part of the premises where he had not the right to be, but was following the course which led directly to the place to which he was directed to go.

It is strongly urged by appellee that the violation of the ordinance in this case was not the proximate cause of the injury, because there was an intervening act of negligence on the part of some one in leaving the elevator gate up, and

that plaintiff was bound to prove that defendant was chargeable with that negligent act; that the only testimony on the point was that produced by the defendant to the effect that the boy himself lifted the gate. But the jury had the right to disbelieve the witness, and, in passing upon the correctness of the ruling on the demurrer prayer, the court could not consider the weight of the evidence or any testimony offered by the defendant. So we must consider the case as if there were no testimony as to who was immediately responsible for the gate being open. In such a situation, starting with the presumption of negligence against the defendant by reason of the violation of the ordinance, and with the further fact that the elevator and the premises were under the control of the defendant, we think the burden was on the defendant to prove, at least, that some one for whom it was not responsible was guilty of the intervening act of negligence. Apart from these considerations, we think, on both reason and authority, that in order to release the defendant from liability, the intervening cause must have been a superseding cause.

The connection between a defendant's negligence and the plaintiff's injury may be broken by an intervening cause. But in order to excuse the defendant, this intervening cause must be either a superseding or a responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury. It is a responsible one, if it is the culpable act of a human being, who is legally responsible for such act. The defendant's negligence is not deemed the proximate cause of the injury, when the connection is thus actually broken by a responsible intervening cause. But the connection is not actually broken, if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation. Of course, the definition of a superseding cause implies that the defendant's negligence cannot be the cause of the injury.

If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the preson first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another. *Sherman & Redfield on Negligence* (6th Ed.), 32 and 34, and cases there cited. See, also, *Lane v. Atlantic Works,* 111 Mass. 140; *Handyside v. Powers,* 145 Mass. 123, 13 N. E. 462; *McIntire v. Roberts,* 149 Mass. 450, 22 N. E. 13; note to *Heney v. Dennis* (93 Ind. 452), 47 Am. Rep. 381; *Howe v. Ohmart,* 7 Ind. App. 32, 33 N. E. 466; *Burrows v. March Gas. Co.,* L. R. 5 Exch. 67, affirmed in L. R. 7 Exch. 96; *Koelsch v. Philadelphia Co.,* 152 Pa. 355, 25 A. 522.

In *Torts Restatement* (Am. L. Inst., Tentative Draft, No. 8), sec. 322, it is said: "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of another's injury which the actor's negligent conduct is a substantial factor in bringing about, if the actor at the time of his negligent conduct should have realized that a third person might so act."

Section 324 reads:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for an injury caused thereby."

"The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor

to liability, cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk, from which it was the purpose of the duty to protect him, resulted in injury to him, would be to deprive the other of all protection and to make the duty a nullity."

This quotation contains a very clear statement of the law as recognized by the great weight of authority.

The case of *Hagerstown v. Foltz,* 133 Md. 52, 104 A. 267, cited by appellee, announces no different principle. In that case the City of Hagerstown was sued because an ordinance which prohibited the obstruction of the sidewalks of the city was violated by the obstruction of a sidewalk with a table which the city permitted to remain there, and the plaintiff was injured by being struck by the table when it was hit by an automobile backing up on the pavement. It was held that the city was not liable, because it was not shown that the violation of the ordinance was the proximate cause of the injury, the court holding that there was nothing in the circumstances to show that the accident was the natural and probable consequence of such violation, or that the act of the driver of the automobile in backing the car over the curb and upon the sidewalk ought to have been foreseen by the defendant. The rule stated by the court in *State v. Wash., B. & A. Elec. R. Co.,* 130 Md. 612, 101 A. 546, 549, is quoted, that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear "that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

This is in accordance with the authorities cited above. In the present case the manifest reason for the passage of the ordinance was to guard against negligence in leaving elevator gates open, and it was a question for the jury whether it ought to have been foreseen by the defendant that a failure to comply with the ordinance was likely to result in such an accident as occurred. It does not appear from the record that

there was a demurrer prayer offered by the defendant on the ground of contributory negligence. But without that, if it appeared from the evidence of the plaintiff that the plaintiff's decedent was guilty of contributory negligence as a matter of law, the error in withdrawal of the case from the jury on the ground of lack of primary evidence would not be reversible error. But the evidence of the plaintiff does not show contributory negligence as a matter of law. The mere fact that one, in a place where he had a right to be, by reason of insufficient light, walks into an open shaft on the way to a place to which he was invited, is not sufficient. It was a jury question. *People's Bank v. Morgolofski,* 75 Md. 432, 23 A. 1027; *Morgenstern v. Sheer,* 145 Md. 208, 125 A. 790.

There were a number of exceptions taken to rulings on evidence, but only the second, fourth, and twelfth were pressed. We think there were errors in the rulings which were the subjects of the second and fourth exceptions, but they were not prejudicial. In the second exception the witness should have been permitted to testify that he tried to turn on the light. The failure of the bulb indicated that it was worn out.

In the further exception the certified copy of the death certificate procured from the state board of health was admissible under article 43, section 27, of the Code (Supp. 1929), and was erroneously excluded when offered as a whole. The objection, however, was not substantial. The only pertinent part was admitted.

There was no error in the ruling in the twelfth exception, which was to the refusal of the court to permit the jury to inspect the premises. That was within the discretion of the trial court, and the fact that the court may have indicated a different intention at some time during the progress of the case makes no difference, as it does not appear, and is not charged, that the appellant was misled thereby in withholding testimony which he otherwise would have offered.

*Judgment reversed and new trial awarded, with costs to appellant.*

BOND, C. J., and PARKE, J., dissent.