DIANA W. PALMS ET AL. *v.* SHELL
OIL COMPANY ET AL.

[No. 447, September Term, 1974.]

*Decided February 18, 1975.*

The cause was argued before MENCHINE, MOORE, LOWE and MELVIN, JJ.

*Bernard J. Casey* and *Louis J. DiTrani*, with whom were *William H. Wilcox* and *Gall, Lane & Powell* on the brief, for appellants.

*William H. Clark* and *Joel Savits*, with whom was *Matthew J. Kastantin* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

The parents of Valerie Anne Palms sued High Point Shell, Inc. and Shell Oil Company, on their own behalf and as Valerie's next friend in the Circuit Court for Prince George's County. Valerie was 18 months old when she was injured as a result of her family's having sought service for their motor vehicle.

Mr. and Mrs. Palms were traveling through Maryland from their New Jersey home on their way to visit Mrs. Palms' brother in Potomac, Maryland. Their automobile broke down en route and they were towed by a High Point tow truck into the High Point service station. After learning that the vehicle could not be repaired until the morrow, the Palms called for Mrs. Palms' brother to pick them up, then headed for the waiting room and office to await his arrival.

The small room in which they waited was sparsely furnished with a desk, a chair, a vending machine, display

materials and advertising signs. One such sign was a thin circular piece of sheet metal, with four prong-like projections, firmly set in a stand on the floor. It was designed to be placed within a tire with the prongs projecting inside the tire casing leaving the advertising on the circular portion exposed for viewing. The tire would serve as a large cushion-like frame for the rather sharp sheet metal of which the sign was composed. On this occasion the sign was exhibited bare, without the encircling tire, braced upright in a tire stand near the front window of the room.

The front wall of the room where the Palms waited faced out upon the service area containing the gas pumps, etc. The wall consisted primarily of a plate glass window set upon a ten inch high ledge supporting it, which on other occasions had held displays. The ledge was approximately eight inches wide (measured into the room from the window) forming a short wall-like effect beneath the window. To pass the time, Valerie and her sisters were looking out the window. Apparently to obtain a better view the 18 month old Valerie climbed on the ledge, took one or two faltering steps then fell into the sharp metal sign standing in the tire rack near the ledge.

Valerie was severely injured by a cut extending over one inch on the right side of her nose and three and one half inches over the right cheek and into the chin. The cut went almost completely through her cheek into the mouth cutting all layers of tissue except the lining of the mouth. Sixty-seven sutures were required to close the wound.

The evidence was heard by a jury; however, at the conclusion of the submission of evidence by the parties, the judge granted High Point and Shell a directed verdict. In explaining this action to the jury the judge told them:

" This directed verdict will be granted on the theory that there was intervention of an independent factor; namely, the slipping, which was the proximate cause of the injury. And any negligence, if any, by the omission of duty or the

"failure to utilize the sign in the purpose intended by placing the naked insert where it was, of course, in the Court's opinion, was not in and of itself the proximate cause of the serious consequences."

That which the judge called "proximate cause" is more descriptively termed "responsible cause . . . which is the culpable act of a human being who is legally responsible for such act.", *State v. Hecht Company*, 165 Md. 415, 421, and which comprises a breach of a duty to the injured party. See *Tri-State Truck and Equipment Company, Inc. v. Stauffer*, 24 Md. App. 221, citing W. Prosser, *Law of Torts*, § 41 at 236, 241, 242, (4th ed.) The duty here is conceded by High Point as being one of ordinary care and caution to the invitee Valerie, to see that the portion of the premises used by her was in such condition as not to imperil her. *Evans v. Hot Shoppes, Inc.*, 223 Md. 235.

To that duty is usually added a caveat making it applicable only in the event the invitee herself exercised ordinary care. We are not burdened with any question of contributory negligence here, however, since the Court of Appeals has held that children of such tender years are incapable of exercising judgment or discretion and thus cannot be guilty of contributory negligence. *Miller v. Graff*, 196 Md. 609 applied the principle to a four year old child, and we have no trepidation holding it applicable to Valerie at 18 months. Would that all of the sequelae of proximate cause resolve themselves so easily.

We find ourselves faced with applying principles of negligence to two appellees; one the service station which invites the public to its premises; the other the distributor of the instrument of injury. The duties of each to Valerie differ substantially. Initially we deal with High Point, subsequently with Shell.

## High Point's Liability

Appellees claim that " . . . it was the intervening act of Valerie Palms walking along the ledge in High Point Shell's service station, along with the inattentive care displayed by

the parents to their daughter's act, that proximately caused the accident." We do not agree that the evidence is so conclusive that this should be determined as a matter of law. In *State v. Hecht Company*, 165 Md. at 421, Judge Adkins explained the application of the doctrine of an intervening cause:

> "The connection between a defendant's negligence and the plaintiff's injury may be broken by an intervening cause. But in order to excuse the defendant, this intervening cause must be either a superseding or a responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury. It is a responsible one, if it is the culpable act of a human being, who is legally responsible for such act. The defendant's negligence is not deemed the proximate cause of the injury, when the connection is thus actually broken by a responsible intervening cause. But the connection is not actually broken, if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation."

In gauging "foreseeability" of a subsequent act matters of common knowledge are imputed to the actions, *Lashley v. Dawson*, 162 Md. 549, and occasional negligence which is one of the ordinary incidents of human life often must be anticipated. *Restatement of Torts*, 2d § 302. It is not beyond the realm of ordinary anticipation to conceive that a room to which the public is invited will be occupied by children from time to time; nor is it even beyond the common knowledge of an ordinary man that children are inquisitive, exploratory, inclined to climb and "occasionally negligent."

The question of whether placing of the naked, sharp and potentially dangerous sign in a place designed to

accommodate the public could be considered by a jury as a "substantial factor" contributing to the injuries. *Holler v. Lowery*, 175 Md. 149; *Farley v. Yerman*, 231 Md. 444; and as indicated by *Hecht, supra,* the foundation upon which the judge's opinion should have rested but to which he makes no allusion in his opinion is whether or not the intervening act, without which the injury may not have occurred was *foreseeable,* or could reasonably have been anticipated. *Holler v. Lowery, supra,* at 162; *State v. Hecht Company,* 165 Md. at 421-422; *Penn. Steel Co. v. Wilkinson,* 107 Md. 574, 581.

The "intervening act" of Valerie's fall, even if negligent, cannot act as a bar under the contributory negligence doctrine, *Miller v. Graff,* 196 Md. 609, *Cf. Taylor v. Barlly,* 216 Md. 94; nor can the onus of the parental neglect, asserted also by appellees, be imputed to the child so as to thwart that concept. Courts Art., § 10-910, formerly Md. Code, Art. 75, § 2. In *Caroline v. Reicher,* 269 Md. 125, the Court of Appeals through Judge Digges declined to permit a superseding cause instruction on the basis of parental negligence conceding it an "attempted end run around the provisions of Art. 75, § 2." The Court said at 131:

" . . . if that section is to have any meaning it is only in the somewhat *extraordinary situation where the parent's negligence is such as to constitute an independent and superseding cause of the child's injuries, that the dormant negligent act of another is discharged, Katz v. Holsinger,* 264 Md. 307; *Farley v. Yerman,* 231 Md. 444; *Barnes v. Housing Authority,* 231 Md. 147." [Emphasis added].

Thus it would seem that if the contributory negligence of the child is not a bar, *Miller, supra,* and the neglect if any of the parent being far from "extraordinary" as a matter of law can neither be imputed to the child, Courts Art. § 10-910, nor serve as a superseding cause, *Caroline v. Reicher, supra; Farley v. Yerman,* 231 Md. at 448-450, appellees cannot by synergism combine the two to effect a preclusive result which neither alone could achieve. We think that this case

classically presents the "middle ground" alluded to by Judge Digges in *Reicher* "where the issue of the existence of superseding negligence is properly left to the trier of fact." As is pointed out by Professor Prosser, *Law of Torts, supra,* at 242:

> "The plaintiff is not, however, required to prove his case beyond a reasonable doubt. He need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise. Proof of what we call the relation of cause and effect, that of necessary antecedent and inevitable consequence, can be nothing more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we had observed these sequences on previous occasions.' If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists."

Finally, we are cognizant of and easily distinguish the passive-active negligence test asserted by appellees and applied in *Maggitti v. Cloverland Farms Dairy, Inc.*, 201 Md. 528 as first propounded by *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 387 while discussing proximate cause:

> "Variously stated, the universally accepted rule as to the proximate cause is that, unless an act, or omission of a duty, or both, are the direct and continuing cause of an injury, recovery will not be allowed. The negligent acts must continue through

every event and occurrence, and itself be the natural and logical cause of the injury. It must be the natural and probable consequence of the negligent act, unbroken by any intervening agency, and where the negligence of any one person is merely passive, and potential, while the negligence of another is the moving and effective cause of the injury, the latter is the proximate cause and fixes the liability."

In *Bloom,* in addition to the passive negligence (in that case, a double parked vehicle), the Court rested its holding on the fact that the accidents were caused by independent intervening acts which were neither induced by, *nor foreseeable* as, the consequence of the passively negligent act. *Jubb v. Ford,* 221 Md. 507, 514. We find untenable appellees' argument that, as a matter of law, Valerie's actions here (or similar ones by other children) unforeseeably joined with High Point's negligence to cause injury. That exposed sharp objects in public places are dangerous, especially to immature invitees whose judgment and discretion are limited at best, is not a consequence we find beyond the realm of ordinary intelligence.

But this case is even more easily distinguishable on the basis of Bloom's "passive" terminology. An instrument with exposed sharp edges on every side made stationary and left in a stand on the floor, knee high to an adult and head high to a child, in an area open to the public by invitation, is something more than "passive negligence." It constitutes an overt exposure of a continuing danger. It is potential perhaps, but certainly not "passive."

In distinguishing the passive-active philosophy of *Bloom* and *Maggitti* the Court of Appeals said in *Jubb,* 221 Md. at 513-514:

"An act is negligent if the actor should realize that it is likely to affect the conduct of another or third person in such manner as to create an unreasonable risk to the other . . . . The connection between [High Point's] acts and omissions and the

> injury was stronger and more direct, and what occurred here was far more likely to have occurred as a result of what [High Point] did and did not do, and so to have been anticipated, than in those cases."

Looking at the evidence in the light most favorable to appellants, as we are compelled to do, it is clear that "the evidence presented and the logical inferences deducible therefrom [did not] admit of but one conclusion." *Reicher,* 269 Md. at 131; *accord, Penn. Steel Co. v. Wilkinson,* 107 Md. 574, 581. The trier of fact should have been permitted to determine whether the sign as exposed by High Point constituted negligence on the part of High Point, and if so, was it reasonably foreseeable that the resultant injury would occur.[1]

### Shell Oil Company

We have treated the question of liability exclusively as it related to High Point as distinguished from the Shell Oil Company because of the obvious distinction necessary in assessing responsibility for the injury. Shell owned the premises, leased it to High Point and supplied High Point with most, if not all, of the products sold there. Shell provided substantial advertising for the products supplied and distributed the sign upon which the child was injured.

The record contains evidence and argument on the question of Shell's control or lack of control over High Point's activities both supporting and negating the application of the respondeat superior doctrine. Although the judge specifically stated that he was going to rule on that question, he did not do so, apparently because of seeming lack of necessity as a result of the directed verdict. While we are given limited discretion to decide questions presented but not decided by trial courts, this "Court will not ordinarily decide any point or question which does not appear by the record to have been

---

1. A foreseeability instruction on these facts would seem to have more precisely clarified the issue for the jury than would the more technical and not so precise question of intervening cause, raised below and argued here.

tried *and decided* by the lower court; . . . ." [Emphasis added]. Md. Rule 1085.

We note upon remand that the record is not clear whether Shell manufactured these signs as well as distributed them. Nor was there argument below addressed to the question of Shell's liability for design defect or intended use as the supplier of the sign. *Cf., Volkswagen of America v. Young,* 272 Md. 201; *Babylon v. Scruton,* 215 Md. 299. Since this question is a novel one in Maryland we think the trial judge should have the opportunity, and we the benefit, of that *nisi prius* determination. For those reasons, we decline to consider these questions. If raised upon remand, the trial judge should address himself to them.

> *Reversed and remanded for a new trial.*
>
> *Costs to be paid by appellees.*