## ALLEN W. PRATT ET AL. *v.* MARYLAND FARMS CONDOMINIUM PHASE 1, INC.

[No. 1102, September Term, 1978.]

*Decided June 8, 1979.*

The cause was argued before MASON, WILNER and MACDANIEL, JJ.

*Barry F. Selig,* with whom were *Sullivan & Selig, P.A.* on the brief, for appellants.

*Christopher L. Allen,* with whom were *James A. Welch* and *Welch, Murphy & Welch* on the brief, for appellee.

MacDANIEL, J., delivered the opinion of the Court.

The appellants, Allen W. Pratt, a minor, by and through his father and next friend, George H. Pratt, and George H. Pratt, individually, filed a suit, in the Circuit Court for Prince George's County, against Potomac Electric Power Company (Pepco) and Maryland Farms Condominium, Phase 1, Inc. The appellants alleged that the defendants were responsible for injuries sustained by the minor child on April 16, 1977, when he climbed a pine tree and came in contact with an uninsulated electrical wire. The tree and the electrical easement were on the property of the condominium complex where the child lived with his parents.

Prior to trial, on August 31, 1978, the appellants settled with Pepco and signed a Joint Tortfeasor's Release. The trial with respect to Maryland Farms, the appellee, proceeded. The appellee moved for a directed verdict at the conclusion of the plaintiffs' case and again at the conclusion of the entire case. Rulings on the motions were reserved by the lower court. The case was submitted to the jury, which returned a judgment in favor of the appellants for $20,000. After a hearing on the arguments, the court granted the appellee's Motion for Judgment N.O.V.

The testimony in the court below showed that Allen Pratt was thirteen years old and was in the eighth grade at the time of the accident. He testified that he went behind the condominium complex to climb trees with his younger sister and her friend, Donna Shepherd. He was asked:

"Q Underneath the trees what is located back there?
A Under the pine trees a bike rack.

. . . .
Q . . . [D]id you ever go down there to play?
A No.

Q Did you ever go down there and observe anybody else playing in that area?

A No.

Q Did you ever go down to that area to climb trees?

A No.

. . . .

Q Why did you pick the pine tree?

A Because it's an easy one to get to.

. . . .

Q Before you went up into the tree and started climbing it did you observe any power lines or electrical wires coming into or out of the tree?

A No.

. . . .

Q How high off the ground would [the lowest] branch have been if you recall?

A About five feet.

. . . .

Q When you got up into the tree just prior to the time that you were shocked what were you doing?

A Throwing down pine cones.

Q So you were picking pine cones off the limbs and throwing them to the ground?

A Yes.

Q As you reached for the pine cones did you see any electrical wires in the tree?

A No."

In addition, he was asked:

"Q Allen, were you aware that someone else had injured themself on the electrical wires prior to the time that you hurt yourself?

A No."

Donna Shepherd, who was eleven at the time of the trial, testified that she and others ride their bikes in the area where Allen Pratt was injured. She was shown a picture of the tree involved in the accident, and she testified:

"Q And in looking at it now does it look like the tree?

A  Yeah.

Q  Do you see the wire above it?

A  Yes.

. . . .

Q  Okay, do you — how do you know where [Allen Pratt] was?

A  Because I stood back and looked up.

Q  Could you see the wires when you looked up there?

A  Un huh.

Q  You can see them now, though, can't you?

A  Yes."

The appellee's General Manager, Georgene O'Hara, testified that she was aware, at the time, that Pepco had an electrical wire running through the particular tree which Allen Pratt had climbed. She knew that a bike rack was in the general area of the tree. She also was aware of a prior accident, in July 1976, in which an individual hired by the appellee received an electrical shock while removing a dead tree from the premises. She never hired anyone to prune the trees in the easement area.

Joseph Morgan, a maintenance engineer for the appellee, testified that initially the bike rack had been placed some distance from the tree in question, but that "the tenants or somebody else moved it back there." He testified that he was in the specific area almost every day because it was the site of a compacter. He had no knowledge that children played in the area. He testified that the appellee did not trim the trees in the area, but that Pepco periodically checked the trees.

The appellant's mother, Mrs. Pratt, was shown a photograph of the tree in question, and she testified:

"Q  Does that picture fairly and accurately reflect the condition of the tree, bike rack, fence, etc., that you have mentioned as it was on that date?

A  Well, it looks like it. That is the way the tree looked and you can see the wires here, too."

The trial judge instructed the jury as follows:

"If you find from the testimony that the Defendant, Maryland Farms Condominium, prior to the Plaintiff's injury had actual knowledge or that a reasonable prudent person should have foreseen or anticipated the electric wires were a danger to the Plaintiff by virtue of the Defendant's prior knowledge that the electric power line was uninsulated that the Defendant's prior knowledge that a tree trimmer had been electrically burned on July 16, 1976, by these electrical wires, that the Defendant's prior knowledge that a bicycle rack was near the tree through which the uninsulated electrical wires and that children use bicycles and that Defendant, Maryland Condominium, failed to guard against or protect the Plaintiff by taking reasonable steps to protect him, then you must find the Defendant, Maryland Farms Condominium, negligent."

With regard to the conduct of Allen Pratt, the judge said:

"A Plaintiff cannot recover if his negligence is a cause of his own injury. The Defendant has the burden of proving by the preponderance of the evidence that the Plaintiff's negligence was a cause of the Plaintiff's injury. Contributory negligence is negligence on the part of the person injured which proximately causes the injury of which he complains. The standard by which the conduct of the Plaintiff, a child, is measured when the Plaintiff, a child, is injured as a result of a contact with electric wires while climbing a tree is such care as is ordinarily exercised by children of the same age, capacity, discretion, and experience under the same or similar circumstances."

In explanation of its granting of the appellee's Motion for Judgment N.O.V., the court stated:

"I think it is well settled in the cases that we have

had so far, and is precedent in Maryland Law, that a possessor of land is liable for harm that is caused to an invitee by a condition of which he was aware or in the exercise of due care should have been aware only if he realizes that the condition constitutes an unreasonable risk to an invitee, that there is reason to believe that the invitee will discover the risk and fails to exercise reasonable care to make the condition reasonably safe or to warn the invitee.

. . . .

"Even if this Court determines under that case I have just cited that Maryland Farms, Inc. knew or should have known that the position of the tree in relation to the wires created an unreasonable risk, there was no reason for Maryland Farms, Inc. to believe that Allen Pratt, acting as a reasonable person, would not discover the wires and realize the risk of coming into contact with them."

I

The appellants argue, now, that the lower court erred in granting the appellee's Motion for Judgment N.O.V. There was, the appellants contend, sufficient evidence for the jury to determine the question of negligence.

In the present case, both parties concede, and, accordingly, we will assume, that Allen W. Pratt was on the property in question as an invitee of the appellee. In Maryland, the liability of possessors of land with regard to invitees is as follows:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees; and
(b) should expect that they will not discover

or realize the danger, or will fail to protect themselves against it, and

      (c) fails to exercise reasonable care to protect them against the danger."

*Restatement (Second) of Torts* § 343 (1965).

For statements of approval of these principles see *Honolulu Ltd. v. Cain,* 244 Md. 590, 596, 224 A. 2d 433 (1966), and the cases therein cited. *See also Gast, Inc. v. Kitchner,* 247 Md. 677, 685, 234 A. 2d 127 (1967).

The above standards clearly apply to common areas set aside by a landlord for the use of his tenants. *See, e.g., Macke Laundry Serv. Co. v. Weber,* 267 Md. 426, 429, 298 A. 2d 27 (1972), and the cases cited therein. Although there is no clear authority in Maryland, we hold that these standards apply to the conduct of a landlord even where there is an easement across his property and the easement-holder has certain duties of maintenance and repair.

The Court of Appeals of Maryland has explicitly elaborated on the above rule in *Yaniger v. Calvert Bldg. & Con. Co.,* 183 Md. 285, 288, 37 A. 2d 263 (1944), as follows:

"The liability of the owner of a public building to invitees has been defined by this Court in numerous cases and the law governing it is well settled. The owner is not an insurer of such persons but owes them the duty, only, to exercise ordinary care to render the premises reasonably safe and to give warning of latent or concealed perils. When the facts alleged show that the danger is as obvious to an invitee as it is to the owner, the latter is not liable for injuries sustained in failing to heed the danger. *Pinehurst Co. v. Phelps,* 163 Md. 68, 160 A. 734; *Morgenstern v. Sheer,* 145 Md. 208, 217, 125 A. 790; *Fulton Building Co. v. Stichel,* 135 Md. 542, 545, 109 A. 434; *Yockel v. Gerstadt,* 154 Md. 188, 140 A. 40; *Texas Co. v. Washington B. & A. Co.,* 147 Md. 167, 173, 127 A. 752."

Quoting *Gordon v. Maryland State Fair,* 174 Md. 466, 469, 199 A. 519 (1938), the Court added:

"The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality or the danger therefrom to persons going upon the property. *It is when the perilous instrumentality is known to the owner or occupant, and not known to the person injured, that a recovery is permitted.* * * * And hence there is no liability for injuries from dangers that are obvious, or as well known to the persons injured as to the owner or occupant." 183 Md. at 289. (Emphasis supplied.)

*See also Elmar Gardens, Inc. v. Odell,* 227 Md. 454, 458, 177 A. 2d 263 (1962).

We note that in Maryland, while there is no doctrine of "attractive nuisance" applicable to children who are trespassers or licensees, *Fitzgerald v. Montgomery County,* 25 Md. App. 709, 712-16, 336 A. 2d 795 (1975), a possessor of land must consider, in exercising reasonable care to make premises safe from any unreasonable risk of harm to his invitees, the capacity of children to understand dangers. *See Macke Laundry Serv. Co. v. Weber,* 267 Md. at 432, 298 A. 2d at 31. *See also Palms v. Shell Oil Co.,* 24 Md. App. 540, 544, 332 A. 2d 300 (1975), where we said:

"It is not beyond the realm of ordinary anticipation to conceive that a room to which the public is invited will be occupied by children from time to time; nor is it even beyond the common knowledge of an ordinary man that children are inquisitive, exploratory, inclined to climb and 'occasionally negligent.' "

In *C. & P. Tel. Co. v. Hicks,* 25 Md. App. 503, 523-24, 337 A. 2d 744 (1975), we discussed the burden of proof in a negligence case. We said:

"The basic rule is that the burden of proof is on the party asserting the affirmative of the issue, as determined by the pleadings and the nature of the

case. *Brehm v. Lorenz,* 206 Md. 500, 506. Thus, the plaintiff has the burden of proving each of the elements of a cause of action for negligence. This is explained in 2 F. Harper & F. James, *The Law of Torts* § 19.1, pp. 1062-1063 (1954): 'The term burden of proof is used in two senses. The first is often called the burden of going forward with evidence and it means that if the plaintiff does not, in the first instance, introduce evidence on each element which is sufficient to warrant a finding in his favor, he will lose his case at the hands of the court (by nonsuit, directed verdict, or the like). If the plaintiff has introduced sufficient evidence (before he rests his case) he has made out a prima facie case and is entitled to go to the jury. His burden of going forward is met and drops out of the case. Thus the burden of going forward with evidence is applied always by the court, never by the jury. . . .' "

Thus, in the present case, to reach the jury, the appellants must have presented evidence in support of each of the above enumerated elements of a cause of action against a possessor of land in addition to the standard elements of a negligent action.

With respect to the sufficiency of the evidence to raise a jury question, the Court of Appeals in *Beahm v. Shortall,* 279 Md. 321, 341-42, 368 A. 2d 1005 (1977), quoted with approval from *Curley v. General Valet Service,* 270 Md. 248, 264, 311 A. 2d 231 (1973):

" 'We said in *Fowler v. Smith,* 240 Md. 240, 246-247, 213 A. 2d 549 (1965) that negligence is a relative term, to be decided upon the facts of each particular case; that ordinarily it is a question of fact to be determined by the jury; that before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish

negligence drawn; that "Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury;" that the rule requires submission of the case to the jury if there be any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury; that to meet the test of legal sufficiency, the party having the burden of proving another party guilty of negligence cannot sustain this burden "by offering a mere scintilla of evidence amounting to no more than a surmise, possibility, or conjecture, that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value." To like effect, see *Richardson v. Rice,* 256 Md. 19, 259 A. 2d 251 (1969); *Williams Construction Co. v. Construction Equipment, Inc.,* 253 Md. 60, 251 A. 2d 864 (1969); *Snowhite v. State,* [Use of Tenant, 243 Md. 291, 221 A. 2d 342 (1966)]. The test of legal sufficiency, we have held, "is whether the evidence serves to prove a fact or permits an inference of fact that could enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover." *Stein v. Overlook Joint Venture,* 246 Md. 75, 81, 277 A. 2d 226, 230 (1966).' "

## II

Applying the above law to the facts in this case and bearing in mind that we must make all reasonable inferences favorable to the appellants, we hold that the appellants presented sufficient evidence to raise a question of negligence to be decided by the jury. Our reasoning is as follows.

The appellee's knowledge, through its agents, of the presence of the bike rack near the tree in question may be taken as evidence that the appellee had reason to believe that

children played in the areas. As we indicated above, it might be reasonably anticipated that the children would climb the trees. Although the appellee, through its agents, was aware that electrical wires ran by the tree, the critical issue here is that the prior accident of an employee had placed the appellee on notice that the wires were dangerous, *Gordon v. Maryland State Fair, supra.*

Apparently, Pepco was normally responsible for keeping the trees in the area trimmed. However, the fact that an agent of the appellee was in the specific area almost daily could be construed as evidence that by the exercise of reasonable care the appellee might have discovered that the tree was not trimmed and that there existed a dangerous condition. The problem could have been reasonably remedied by calling the situation to the attention of Pepco and requesting that the trees be trimmed or by posting notice.

While the appellants did not directly address the issue of whether the appellee should have reasonably expected that a child old enough to climb a tree would not also realize the presence of dangerous wires, we find that there was sufficient evidence to support such a finding by the jury. Although several witnesses testified that the electrical wire was visible in a picture of the tree, the jury could have found that a boy of Allen Pratt's age and education could not reasonably be expected to notice the wire and appreciate the danger while playing.

Therefore, we hold that the appellants did present sufficient evidence on whether Allen Pratt could reasonably be expected to realize the danger of his activity to raise the question for the jury. Accordingly, the trial judge should not have granted the appellee's Motion for Judgment N.O.V., and we will reinstate the jury's verdict.

> *Judgment N.O.V. reversed.*
> *Jury verdict reinstated.*
> *Case remanded to the Circuit Court for Prince George's County for entry of judgment in accordance with this opinion.*
> *Costs to be paid by appellee.*