933 F.2d 1002
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Michael V. VOELKER, Individually and as Personal
Representative of the Estate of Andrew D. Voelker, Merridee
A. Voelker, Individually and as Personal Representative of
the Estate of Andrew D. Voelker, Plaintiffs-Appellants,
v.
DELMARVA POWER & LIGHT COMPANY, Defendant-Appellee,
and
ASPLUNDH TREE EXPERT COMPANY, Defendant,
v.
John HOZIK, Joan Hozik, Third Party Defendants.
 No. 90-2344.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1991.
Decided May 23, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CA-88-2531-HAR)
 Thomas Joseph Dolina, Power & Mosner, Towson, Md. (Argued), for appellants; Thomas G. Bodie, John J. Nagle, III, Power & Mosner, Towson, Md., on brief.
 Joseph Henry Thomas, Jr., Joseph H. Thomas, Jr. and Associates, Baltimore, Md. (Argued), for Appellees; Michael N. Gambrill, Thomas & Welcome, Baltimore, Md., on brief.
 D.Md.
 REVERSED.
 Before PHILLIPS, MURNAGHAN and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Michael and Merridee Voelker filed suit against Delmarva Power and Light Company for damages resulting from the electrocution death of their son, Andrew. They claim that Delmarva failed to properly maintain uninsulated 14,000-volt power lines and the trees that grew around them. The district court granted Delmarva's motion for summary judgment on the basis that Andrew was contributorily negligent as a matter of law in coming into contact with the power lines.
 
 
 2
 As Delmarva quite properly acknowledged at oral argument, it cannot prove how the incident happened. However, if one possible scenario were based on facts from which a jury could find that Andrew was not negligent, then summary judgment could not be appropriately entered, since Delmarva must affirmatively satisfy its burden of demonstrating contributory negligence as a matter of law. Because the facts of record permit several possible ways the accident happened, one of which might not be interpreted by a jury to involve the negligence of Andrew, we reverse the entry of summary judgment.
 
 
 3
 * On January 1, 1988, ten year old Andrew Voelker and his nine year old brother, Joshua, were playing around a tree at the home of their friend, John Hozik, Jr., also nine years old. The tree, which was at the end of the Hozik driveway on a Delmarva easement, had overgrown Delmarva's power lines. The lines had not been inspected since 1986 and at that time the trees were not trimmed.
 
 
 4
 Andrew climbed the tree to retrieve a stick which he had thrown into its branches. The tree, which all three boys had climbed before, had low thick branches that made it easy for climbing. When Andrew was last seen alive, he was higher in the tree than any of them had been before, near the top. On his way up he shouted down to Joshua that "the power lines are right over my head." No one witnessed the incident or knew where in the tree Andrew was immediately before his death.
 
 
 5
 Dr. E. Smialek, who performed the autopsy, observed burns on Andrew's hands, but he could not reach a conclusion about the circumstances of Andrew's contacting the lines. He testified:
 
 
 6
 There are two recognized reactions to people experiencing electric shock. One is that the person is repelled by that shock and they let go of whatever they are touching. There is another recognized phenomena where a person that sustains the shock retains a grip and they are almost paralyzed so they remain in prolonged contact with it and they can't release their grip. Looking at Andrew's injuries, I don't think that his grip remained on that wire for seconds. There was certainly a period of contact to produce a significant burning injury on his hand. Whether he was repelled and suddenly let go of it or it slid out of his grasp, I really can't answer that.
 
 
 7
 Dr. Smialek testified that he also found burns on Andrew's buttocks, the back of his left leg, and the front of his right leg. He concluded that the electricity entered Andrew's hands and exited through other portions of his body. No one, however, could recreate what happened on that New Year's day.
 
 
 8
 Andrew could have deliberately grabbed the power lines for support, or as the parties agree, the electricity could have arced through the air or through branches without his having initially touched the lines. Andrew also could have been above the lines and accidentally fallen, grabbing the lines instinctively as he fell, or he could have been adjacent the lines and accidently slipped, grabbing the lines instinctively for support. Thus, while Andrew could have touched the power lines deliberately without the appreciation of their danger, he also could have been trying to avoid them and touched them by accident. The only testimony about Andrew's possible awareness of the danger was given by his brother Joshua, who stated that the boys were unconcerned with the wires because they believed the wires to be insulated and, if touched, would only cause them to "lose [their] balance and fall and stuff like that." J.A. at 44.
 
 II
 
 9
 In Maryland, four elements must be shown for a person to be contributorily negligent in "electricity" cases:
 
 
 10
 When a person voluntarily touches, or approaches nearer than a reasonably prudent person would, an electric wire, which he knows, or which a person of ordinary knowledge and experience would have reason to believe, is sufficiently charged with electricity to be dangerous, and in consequence thereof he is injured....
 
 
 11
 Le Vonas v. Acme Paper Board Co., 184 Md. 16, 21, 40 A.2d 43, 46 (1944). The standard of care to be applied is that of a child of like age, experience and intelligence. Potomac Elec. Power Co. v. Smith, 79 Md.App. 591, 558 A.2d 768 (1989); Pratt v. Maryland Farms Condominium Phase 1, Inc., 42 Md.App. 632, 402 A.2d 105 (1979).
 
 
 12
 The district court concluded that the fact that all three boys recognized the lines to be power lines was sufficient to conclude that the danger was obvious. The court, however, gave no indication as to how it determined what a ten year old of like experience and intelligence would perceive as dangerous. In fact, nine year old Joshua stated that the boys were unconcerned with the wires because they believed the wires to be insulated. Because of the subjective nature of the child standard of care, Maryland has held that "if the evidence is conflicting, the question of contributory negligence of the child should be resolved by the jury." Stein v. Overlook Joint Venture, 246 Md. 75, 83, 227 A.2d 226, 231 (1967).
 
 
 13
 Assuming that a ten year old could appreciate the danger of touching power lines, there is no direct evidence that Andrew voluntarily touched the wires. The district court believed that even if the electrocution was the result of arcing, Andrew approached nearer to the lines "than a reasonably prudent person would." J.A. at 380. Whether his voluntary presence in the proximity constitutes negligence, however, depends on whether the plaintiff, as a person of ordinary knowledge and experience, should have known the extent of the danger zone. Potomac Edison Co. v. State, Use of Hoffman, 168 Md. 156, 174, 177 A.2d 163, 171 (1935). Again, the "child" standard replaces the objective standard.
 
 
 14
 On a motion for summary judgment, Delmarva must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir.1984). The court must view the evidence and all justifiable inferences in the light most favorable to the Voelkers. Gill v. Rollins Protective Serv. Co., 773 F.2d 592, 595 (4th Cir.1985), reh'g denied, 788 F.2d 1042 (1986). When the record is viewed in this light, a jury could conclude that Andrew was avoiding the power lines, and because of a slip or because of arcing, of which he might not have had knowledge, he was caused to touch the lines involuntarily. Delmarva may well be able to persuade a jury that the more credible inference to be drawn from the facts is that Andrew was contributorily negligent. At the summary judgment stage, however, a court is not free to make such weight and credibility determinations.
 
 
 15
 For the reasons stated, summary judgment is
 
 
 16
 REVERSED.