PAVLIDES et al., Appellants,

v.

NILES GUN SHOW, INC. et al., Appellees.

[Cite as *Pavlides v. Niles Gun Show, Inc.* (1994), 93 Ohio App.3d 46.]

Court of Appeals of Ohio,
Stark County.

Nos. CA 9443, CA 9455.

Decided Feb. 14, 1994.

*Allen Schulman, Jr.* and *Elizabeth A. Burick,* for appellant Gregg L. Pavlides.

*Edwin Davila,* for appellant Thomas E. Snedeker.

*Ralph F. Dublikar* and *James F. Mathews,* for appellees Niles Gun Show, Inc. and Richard L. Walters.

Gwin, Presiding Judge.

Plaintiffs, Greg L. Pavlides and Thomas E. Snedeker ("appellants"), appeal from the judgment summarily entered in the Stark County Court of Common Pleas dismissing appellants' causes of action based upon negligence and willful and wanton misconduct against defendants-appellees, the Niles Gun Show, Inc. and Richard Walters, president and sole shareholder of Niles Gun Show, Inc. The court determined that defendants, as promoters of a gun show at the Canton Civic Center, owed no legal duty to protect the general public from third parties who may steal a firearm from the exhibition and subsequently use the weapon to injure a member of the general public. Although appellants' separately filed their causes of action, the cases where consolidated in the trial court and this court. Plaintiffs Pavlides and Snedeker respectively assign as error:

## PAVLIDES

"I. The order of the trial court in granting summary judgment in favor of appellees by finding that 'reasonable minds could only conclude that the appellees did not owe any duty to the appellant to protect him from harm by a foreseeable danger'—is unlawful, unreasonable and against the manifest weight of the evidence and case law presented.

"II. The order of the trial court in granting summary judgment in favor of the appellees on appellant's claim of willful and wanton misconduct is unlawful, unreasonable and against the manifest weight of the evidence and case law presented."

## SNEDEKER

"I. The trial court erred in granting summary judgment in favor of appellees by finding that reasonable minds could only conclude that the appellees did not owe any duty to the appellant to protect him."

## FACTS

We present the facts of this case in the light most favorable to appellants, the parties who opposed the summary judgment motion. See Civ.R. 56; *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 315 ("[T]he inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the [summary judgment] motion, and if when so viewed reasonable minds can come to different conclusions the motion should be overruled.").

Defendant Niles Gun Show, Inc. is an Ohio corporation engaged in the business of sponsoring and promoting shows at which a variety of items, primarily firearms, are displayed and offered for sale by independent vendors who rent space from the corporation. On the weekend of January 18 and 19, 1992, Niles Gun Show, Inc. conducted such a show at the Canton Civic Center. The corporation rented the center from the city of Canton and paid the city for police and fire protection. However, personnel for Niles Gun Show, Inc. were responsible for visitor ingress at the center and collecting the $3 per person admission fee.

It is the policy of Niles Gun Show, Inc. to deny entrance "whenever possible" to all unsupervised individuals under the age of eighteen. The company's personnel controlling admission at the show are instructed to refuse entrance to individuals suspected of minority, if unaccompanied by an adult, unless proof of majority is established. Richard Walters formulated this policy because young children have no reason to be at a gun show and/or involved with firearms. Walters explained that difficulties exist in controlling unsupervised minors and dangerous weapons being stolen.

Although Walters acknowledges previous thefts of firearms from shows held in the Canton Civic Center, his company does not require the independent vendors to secure the firearms in any manner.[1] Instead, Walters permits each vendor to determine how he or she will display his or her particular weapons. Walters further acknowledges that it is not the company's policy to prohibit the independent vendors from selling ammunition to minors.[2] In fact, Walters did not know whether such a sale is illegal.

On Sunday, January 19, 1992, Edward A. Tilley III, Perry Wiegreff, Jayson Troyer and Brian Limbacher entered the Canton Civic Center gun show on two separate occasions. At the time, Tilley and his companions where all minors with their respective years of age being sixteen, fifteen, thirteen and seventeen. The

---

1. R.C. 2923.19 provides: "(A) No person, in acquiring, possessing, carrying, or using any dangerous ordnance, shall negligently fail to take proper precautions:

   "(1) To secure the dangerous ordnance against theft, or against its acquisition or use by any unauthorized or incompetent person;
   "(2) To insure the safety of persons and property.
   "* * *
   "(b) Whoever violates this section is guilty of failure to secure dangerous ordnance, a misdemeanor of the second degree."

2. Section 922(b)(1), Title 18, U.S.Code reads as follows in pertinent part: "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than 18 years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than 21 years of age."

minors entered the gun show through the main entrance of the Civic Center by paying the requisite admission fee of $3 each. The boys gained entrance and remained at the show on both occasions without inquiries as to their ages.

During their two visits, the boys stole numerous "hand weapons," including a .25 caliber automatic pistol, a .38 caliber pistol and a small caliber Derringer. Troyer, the thirteen year old, successfully purchased .38 caliber ammunition from one of the vendors at the gun show. In describing the thefts, Tilley explained that the firearms were "just laying around" on tables and we "just pick[ed] them up and walk[ed] away with them * * * it was easy."

On January 20, 1992, at approximately 1:30 a.m., Tilley and Wiegreff stole a Chevrolet Camaro. Tilley purposely operated the Camaro on snow-covered roads so to slide into trash cans placed on the side of the road. Witnessing this activity, appellants Pavlides and Snedeker followed the Camaro in their separate motor vehicles. During the chase, the Camaro spun around to a stop and Pavlides and Snedeker parked their vehicles and began walking toward the Camaro. Pavlides ordered the driver to exit the Camaro, but Tilley responded by shooting Pavlides once in the chest with the stolen .38 caliber handgun. Upon hearing the shot, Snedeker turned to run back to his vehicle, whereupon Tilley shot him in the back of the head. Although both men survived the gun shots, Pavlides' injury left him paralyzed from the waist down and Snedeker suffered less serious injuries. Tilley was convicted and sentenced upon his guilty plea to two counts of attempted murder, with two firearms specifications, and one count of unauthorized use of a motor vehicle, in violation of R.C. 2923.02 and 2913.03(A), respectively.

In filing the within actions, appellants assert that Niles Gun Show, Inc. and Richard Walters, as the promoter and sponsor of the gun show, had a duty to protect the general public from unlawful acts of third parties who may steal guns from independent vendors and subsequently injure a member of the general public. Appellants claim Niles Gun Show, Inc. and Richard Walters breached that duty by allowing unsupervised minors into the gun show, allowing weapons to be displayed without properly securing same from theft, permitting the independent vendors to sell weapons and/or ammunition to minors, and in not establishing and enforcing strict safety and security measures. Appellants maintain the breach of this duty was the proximate cause of their injuries and it was foreseeable that the breach of this duty would result in an injury to the general public. Appellants further maintain this negligent conduct constituted willful and wanton disregard for the safety of others, including appellants.

Upon defendants' motion for summary judgment, the court determined that genuine issues of material fact existed regarding proximate cause and foreseeability. However, the court found as a matter of law that the aforementioned duty

does not exist and appellants' causes of action for negligence and willful and wanton misconduct must be dismissed.

## I

Through Pavlides' first assignment and Snedeker's sole assignment, appellants maintain the trial court erred in summarily dismissing the causes of action based upon negligence. We agree.

Civ.R. 56(C) provides, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Summary judgment proceedings present an appellate court the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 78–79, 506 N.E.2d 212, 214. In order to survive a motion for summary judgment, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

In order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616; *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732.

Appellants maintain they have presented sufficient evidence to create a genuine issue of material fact as to whether defendants Niles Gun Show, Inc. and Richard Walters owed the general public, including appellants, a duty to formulate and enforce strict security measures to require the independent vendors to properly secure displayed firearms and to prohibit minors, unaccompanied by an adult, from entering the gun show and purchasing ammunition.

■ It is well settled that "[t]he common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising under the same or similar circumstances." *Mussivand, infra*, 45 Ohio St.3d at 318, 544 N.E.2d at 270, citing *Gedeon v. East Ohio Gas Co.* (1934), 128 Ohio St. 335, 338, 190 N.E. 924, 925. While the creation of a legal duty is often dependent upon the foreseeability of the consequences, an actor cannot necessarily avoid the imposition of a legal duty merely because he/she did not foresee the exact consequence of his/her action. *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 121, 90 N.E.2d 859, 863.

" 'The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. *Freeman v. United States* (C.A.6, 1975), 509 F.2d 626; *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116 [38 O.O.2d 294, 224 N.E.2d 131].' " *Mussivand, infra*, 45 Ohio St.3d at 321, 544 N.E.2d at 272.

Therefore, the question of whether the within defendants owed the general public the aforementioned duty turns on whether a reasonably prudent person would have anticipated a member of the general public (appellants) was likely to be injured by way of defendants' alleged negligence. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 321, 544 N.E.2d 265, 272. It is not necessary that the defendants should have anticipated the particular injury. *Id.* Instead, it is sufficient if defendants' action or inaction was likely to result in an injury to someone. *Mudrich v. Std. Oil Co., supra.*

■ In response to defendants' motion for summary judgment, appellants submitted the affidavit of Bill Goodman, the sole owner and operator of International Gun–A–Rama, Inc., which corporation is in the business of promoting, managing, and organizing gun, knife, hunting and shooting sports shows in a five-state region. The affidavit provides, in pertinent part:

"I have personally been involved in promoting and managing gun shows for over twenty years and promote approximately seventy gun shows per year. As the promoter, my duties include securing a suitable location, interviewing exhibitors and establishing safety policies and procedures which are to be followed by all exhibitors and patrons at my gun shows. The safety procedures I have established and that are enforced at all my shows include:

"(a) not permitting anyone under the age of sixteen to enter the show unless accompanied by an adult;

"(b) having several check points that all patrons must pass through before entering the gun show;

"(c) requiring exhibitors to keep all firearms secured either in display cases or tied down with cable or ropes;

"(d) having several employees patrol the show to insure that all safety rules and procedures are being adhered to by exhibitors and patrons.

"Based upon my review of the facts and evidence presented to me and my experience and expertise in the operation and safety of gun shows, I hold the following opinions:

"(a) Defendants Richard Walters and the Niles Gun Show, Inc. were negligent and failed to comply with the standard of care recognized in the gun show industry by, among other things:

"(1) failing to require that employees check identification to prohibit any persons who appears [sic] under the age of sixteen from entering the gun show unless accompanied by an adult;

"(2) failing to prohibit exhibitors from selling firearms or ammunition to minors;

"(3) failing to require exhibitors to secure all firearms with the use of cables/ropes or display cases;

"(4) failing to have established any safety procedures and/or policies to be utilized in the operation of the gun show;

"(5) failing to provide sufficient security and/or employee supervision during the operation of the gun show.

"Based upon my experience and expertise, I am of the opinion that the availability of any type of firearm and ammunition in the possession of a minor creates a potential danger, and it is clearly foreseeable that a weapon in the hands of a minor will result in injury. Based upon the fact that a 13–year old boy was able to purchase .38 caliber hollow point ammunition and that three [sic] minors were permitted into the defendant Niles Gun Show and able to easily steal firearms creates a foreseeable danger that said minors would use these firearms to cause injury."

From this affidavit and the facts as set forth above, we believe reasonable minds could conclude the defendants Niles Gun Show, Inc. and Richard Walters owed the general public, of which appellants are members, the duty of preventing unsupervised minors' entrance into a gun show where unsecured firearms are displayed. Richard Walters had knowledge that firearms had been stolen from previous gun shows at the Civic Center and comprehended the risks associated with allowing minors who are unaccompanied by an adult into a gun show. Nevertheless, defendants took no action to prevent the theft of weapons and permitted four unsupervised minors to enter the gun show on two separate occasions. Although defendants required the independent vendors to follow certain rules and regulations, those rules and regulations specifically excluded the

prescription that displayed weapons be secured and the proscription that ammunition not be sold to minors. In view of today's society, reasonable minds certainly could conclude that unsecured firearms present an attractive if not irresistible lure to children.

As Justice Zimmerman remarked in *Taylor v. Webster* (1967), 12 Ohio St.2d 53, 57, 41 O.O.2d 274, 276, 231 N.E.2d 870, 873:

"It is a matter of common knowledge that the placing of an air gun in the hands of a youngster without direct supervision is fraught with danger. By so doing, a reasonable probability exists that a situation could develop of the kind shown in this case. By allowing Mark to have the gun defendant laid herself open to the consequences of that unlawful act. Where two or more persons of immature years and judgment congregate with an air gun available, there exists the opportunity and often the impulse to use the gun carelessly and recklessly with the result that injury ensues. News accounts of such happenings are not uncommon."

The trial court's determination that genuine issues of material fact exist as to the issues of foreseeability and proximate cause does not relieve this court from conducting an independent review of those matters. Foreseeability and proximate cause are not equatable, but they are intertwined. *Mussivand v. David, supra.*

"[I]n order to establish proximate cause, foreseeability must be found. In determining whether an intervening cause 'breaks the casual connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence.'" *Id.*, 45 Ohio St.3d at 321, 544 N.E.2d at 272.

The general law school concept stated that one is not liable in negligence for the intervening criminal acts of another. The criminal acts of another were viewed as unforeseeable and superseding in nature. That black and white distinction has become muddied as the development of law recognized that criminal activity can be anticipated under certain circumstances:

"An occupier of premises for business purposes may be subject to liability for harm caused to a business invitee by the conduct of third persons that endangers the safety of such invitee, just as such an occupier may be subject to liability for harm caused to such invitee by any dangerous condition of those premises." *Howard v. Rogers* (1969), 19 Ohio St.2d 42 [48 O.O.2d 52, 249 N.E.2d 804] paragraph one of the syllabus.

In *Snow v. Fraternal Order of Eagles* (Nov. 18, 1993), Richland County App. No. 93–CA–22, unreported, 1993 WL 500297, this court held:

"If it is determined that [a business establishment] should have foreseen that injury was likely to occur to its patrons from the criminal activity occurring in its parking lot, a genuine issue of material facts exists as to whether [the business establishment] breached its duty to protect and/or warn [its patrons]."

■ The facts of this case present the issue of whether reasonable minds could conclude that defendants should have foreseen or anticipated the two types of criminal activity by the minor children herein. In construing the evidence in a light most favorable to appellants, we believe reasonable minds could conclude that defendants, based upon their prior knowledge of thefts and risks associated with permitting unsupervised minor children into a gun show, should have foreseen that children could be lured into stealing an unsecured firearm which the child could not otherwise legally purchase. The secondary and more troublesome criminal activity involves the subsequent use of the stolen firearm by one of the children to intentionally shoot appellants. Should the defendants have foreseen that children who successfully steal a firearm and purchase suitable ammunition at its gun show would use the loaded firearm in the pursuit of criminal activity? We believe reasonable minds could answer this query affirmatively.

Undoubtedly one could reasonably anticipate that a loaded firearm in a child's hand may negligently be discharged causing injury or even death. If such an accident were to occur, the child could be criminally prosecuted for negligent homicide. That criminal activity most likely would *not* be viewed as a superseding cause that would break the causal connection between the adult owner of the firearm who negligently permitted the child to gain access to the weapon. Likewise, we believe reasonable minds could conclude that the intentional act of Edward A. Tilley III, a minor child, in shooting appellants was not a superseding cause that would break the casual connection between defendants' original negligence. This matter is best left to the trier of fact in determining whether the criminal activity in this case could have and should have been reasonably anticipated by defendants.

Accordingly, we sustain Pavlides' and Snedeker's first assigned errors and reverse the trial court's judgment dismissing their negligence claims.

## II

■ Through Pavlides' second assignment, he maintains the trial court erred in summarily dismissing his claim that defendants' failure to provide adequate security to prevent unsupervised minors from entering the gun show where

unsecured firearms were displayed, as well as defendants' failure to formulate the policy that no vendor sell ammunition to a minor, constituted willful and wanton misconduct.

Pavlides seeks to prove that defendants' negligence was a conscious and deliberate disregard of the interests of others so as to rise to the level of willful and wanton misconduct. Such proof would allow Pavlides' claim for punitive damages to survive. See *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464; *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174; *Detling v. Chockley* (1982), 70 Ohio St.2d 134, 24 O.O.3d 239, 436 N.E.2d 208.

From our review of the evidence submitted thus far, especially the facts as recited herein and Bill Goldman's affidavit, we believe reasonable minds could conclude that defendants' negligence constituted a conscious and deliberate disregard of the interests of others.

Accordingly, we sustain Pavlides' second assigned error and reverse the trial court's judgment summarily dismissing appellant Pavlides' claim that defendants' negligence constituted willful and wanton misconduct.

## STRICT LIABILITY

Appellant Snedeker raises for the first time in this case an argument regarding strict liability.

We overrule this argument for appellant's failure to raise same in his complaint and/or in the trial court.

For the foregoing reasons, the judgment entered in the Stark County Court of Common Pleas, Ohio, is hereby reversed, and we remand this cause to that court for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

SMART and WILLIAM B. HOFFMAN, JJ., concur.