727 A.2d 947

Vincent N. VALENTINE, et al.

v.

ON TARGET, INC.

No. 8, Sept. Term, 1997.

Court of Appeals of Maryland.

April 19, 1999.

Clarke F. Ahlers, Columbia, (Sharon E. Haynie of Houston, TX, on brief), for petitioners.

Kevin J. McCarthy (Heather J. Kelly, McCarthy, Bacon & Costello, L.L.P., on brief), Lanham, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, MARVIN H. SMITH, (Retired, specially assigned) and ROBERT L. KARWACKI, (Retired, specially assigned) JJ.

KARWACKI, Judge, Retired, Specially Assigned.

We issued a writ of certiorari in this case to answer the question of what, if any, tort duty a gun store owner owes to third parties to exercise reasonable care in the display and sale of handguns to prevent the theft and the illegal use of the

handguns by others against third parties. Confining our analysis to the well pleaded facts in the complaint filed by petitioner in the instant case, the issue is properly limited to the determination of whether respondent owed a duty to the petitioner's decedent. We hold that such a tort duty is not cognizable under those facts and consequently that the trial court properly granted respondent's motion to dismiss the complaint.

## I.

On July 17, 1993, Edward Wendell McLeod and a confederate stole several handguns from On Target, Inc., the respondent, a gun retailer located in Anne Arundel County. On September 26, 1993, Joanne Valentine was murdered outside of her home in Anne Arundel County by an unknown assailant who shot her with one of the guns stolen from On Target, Inc., on the previous July 17th. Vincent Valentine, the petitioner, as personal representative of the Estate of Joanne Valentine, and as surviving spouse and next friend of Vincent N. Valentine II and Nicholas Paul Valentine, surviving minor children of the deceased, filed suit in the Circuit Court for Anne Arundel County against the respondent to recover damages for her wrongful death.

The complaint sought damages from the respondent based on a claim of negligence. In his complaint petitioner asserted that respondent owed a duty to "Joanne Valentine and to all other persons situate in or near Anne Arundel County, to exercise reasonable care in the display of handguns held out to the public for sale to prevent theft and illegal use of the handguns." (Significantly, the complaint does not describe how the handguns were displayed or what could have been done by respondent's agents to prevent the theft). The petitioner further averred that respondent breached this duty by failing to (1) properly train and supervise its employees to prevent theft of the handguns, (2) properly supervise customers at a time when the store was open to members of the general public for the sale of handguns, (3) adequately keep watch over the handguns and install adequate security devices

to deter, or detect, the theft of handguns, (4) properly secure the handguns and store them in a display case to safeguard them from theft, (5) interrupt the theft of the handguns, (6) notice the theft of the handguns and notify law enforcement authorities in a timely fashion, and (7) failed to warn the community of the theft of the handguns in a timely fashion.

The respondent filed a motion to dismiss pursuant to Maryland Rule 2–322(b)(2) based on a failure to state a claim upon which relief could be granted. After conducting a hearing, the trial court, without stating any reasons, granted the motion to dismiss. The petitioner noted a timely appeal to the Court of Special Appeals and that court affirmed the trial court's dismissal. *Valentine v. On Target,* 112 Md.App. 679, 686 A.2d 636 (1996). Then Chief Judge Wilner writing for the intermediate appellate court, reasoned that the trial court was correct for alternative reasons (1) that the respondent did not owe a duty to the petitioner's decedent under the well pleaded facts of the complaint or (2) even if the failure to prevent the theft of the guns was a breach of some duty, it was not the proximate cause of death of the petitioner's decedent.

## II.

When considering an appeal that arises as the result of the trial court's granting a motion to dismiss, as opposed to the granting of summary judgment or judgment entered after trial, the Court will assume the truth of all well-pleaded facts and any reasonable inferences that can be properly drawn therefrom; however, we do not consider "merely conclusory charges." *Faya v. Almaraz,* 329 Md. 435, 443–44, 620 A.2d 327, 331 (1993), *citing Berman v. Karvounis,* 308 Md. 259, 264–265, 518 A.2d 726, 728–29 (1987). The granting of a motion to dismiss is proper when, even if the facts and allegations as set forth in the complaint were proven to be true, the complaint would nevertheless fail to state a claim upon which relief could be granted. *Id.* at 443, 620 A.2d 327. As the Court of Special Appeals noted, because the trial court did not state its reasons for granting respondent's motion to dismiss, it will be affirmed if the record reveals any legally

sound reason for the decision. *Valentine v. On Target,* 112 Md.App. 679, 682, 686 A.2d 636, 637 (1996).

### III.

 To maintain an action in negligence, the plaintiff must assert in the complaint the following elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *BG & E v. Lane,* 338 Md. 34, 43, 656 A.2d 307, 311 (1995), *citing Rosenblatt v. Exxon,* 335 Md. 58, 76, 642 A.2d 180, 188 (1994). *See also Lamb v. Hopkins,* 303 Md. 236, 492 A.2d 1297 (1985). Facts must be pleaded with some specificity to demonstrate that the elements which are required to sustain the cause of action exist. It is not sufficient to merely assert conclusory allegations suggesting that the elements are in fact present in the controversy. *Id.*

 The existence of all of the elements including a legally recognized duty owed by this defendant to this plaintiff or to a class of persons of which this plaintiff is a member is vital to sustaining a cause of action in negligence. *Rosenblatt v. Exxon,* 335 Md. 58, 76, 642 A.2d 180, 188 (1994). Generally, whether there is adequate proof of the required elements needed to succeed in a negligence action is a question of fact to be determined by the fact finder; but, the existence of a legal duty is a question of law to be decided by the court. Nevertheless, as so aptly stated by W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 30, at 358 (5th ed.1984):

"There is little analysis of the problem of duty in the courts. Frequently it is dealt with in terms of what is called 'proximate cause,' usually with resulting confusion. In such cases, the question of what is 'proximate' and that of duty are fundamentally the same: whether the interests of the plaintiff are to be protected against the particular invasion by the defendant's conduct. . . .

There are, however, a good many defendants, and a good many situations, as to which there is no such duty. In other words, the defendant is under no legal obligation toward the particular plaintiff to act with the care of a reasonable man, and he is not liable even though his conduct falls short of that standard, and the other is injured as a result."

We focus our attention then on the question of whether the respondent owed a duty to the petitioner's decedent under the facts of the instant case. First, it is important to consider the policy reasons supporting a cause of action in negligence. The purpose is to discourage or encourage specific types of behavior by one party to the benefit of another party. The purpose is defined in the first element needed in order to sustain a cause of action in negligence, proof that the defendant had a duty to act to the benefit of the plaintiff. If the creation of a duty has no benefit to the plaintiff then the purpose is defeated. In *Ashburn v. Anne Arundel County,* 306 Md. 617, 627, 510 A.2d 1078, 1083 (1986) we quoted Prosser and Keeton's treatise on torts: "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." PROSSER AND KEETON ON THE LAW OF TORTS, *supra,* at 356. In addition, "[d]uty, it must be recalled, does not exist in a vacuum; the duty required in law must be to the person injured. It is a focused duty." *Valentine v. On Target,* 112 Md.App. 679, 684, 686 A.2d 636, 638 (1996). As further defined by Prosser and Keeton "In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk," *supra* at 356.

Accordingly, the duty question that arises under the facts of the instant case primarily requires consideration of two of the concepts which create duty, relationship or nexus of the parties and foreseeability. As we further held in *Rosenblatt, supra,* "[i]n determining the existence of a duty owed to

a plaintiff, we have applied a 'foreseeability of harm' test, which is based upon the recognition that a duty must be limited to avoid liability for unreasonably remote consequences. Inherent also in the concept of duty is the concept of a relationship between the parties out of which the duty arises." 335 Md. 58, 77, 642 A.2d 180, 189 (1994). Petitioner does not allege any facts to support his claim that respondent knew or should have known of the existence of circumstances that increased the probability that a thief would steal guns from its retail store and that a third unknown party would obtain one of those stolen guns and use it in a criminal manner. Nevertheless, petitioner argues that it is generally foreseeable that guns are increasingly used in the commission of crimes. In effect, petitioner's argument would impose a duty based solely on an imprecise notion of a foreseeability of risk of harm to the public in general. Notwithstanding the fact that foreseeability is a critical element in ascertaining whether or not a duty exists, not all foreseeable harm gives rise to a duty; there are other factors to consider such as intervening circumstances or parties.

■ Although this Court has analyzed the concept of duty under a variety of different factual scenarios, our holding in *Scott v. Watson*, 278 Md. 160, 359 A.2d 548 (1976), articulates the law in Maryland and adds substantial support for our holding in the case at bar. In that case we were called upon to answer a question certified to us by the United States District Court for the District of Maryland, pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974) § 12–601 *et seq.*, of the Courts & Judicial Proceedings Article. The questions certified to us involved what, if any, duty a landlord owed to tenants to protect them from the criminal acts of third parties committed in the common areas of the leased premises which were within the landlord's control. *Id.* at 161–62, 359 A.2d 548. In that case, a tenant was shot in the underground parking garage of the apartment complex by an unknown assailant. Plaintiff brought an action sounding in negligence against the landlord. We held that "[t]he general rule is a subsidiary of the broader rule that a

private person is under no special duty to protect another from the criminal acts by a third person, in the absence of statutes, or of a special relationship. *See* Restatement of Torts (Second) § 315 (1965) (no duty to control third person's conduct so as to prevent physical harm to another unless a special relation exists between actor and third person, or between actor and the other.)" *Id.* at 166, 359 A.2d 548.

As clearly outlined by Judge Wilner, "[t]he view expressed in *Scott* has been confirmed in later cases. *See Lamb v. Hopkins*, 303 Md. 236, 492 A.2d 1297 (1985); *cf. Southland Corp. v. Griffith*, 332 Md. 704, 716–17, 633 A.2d 84 (1993), applying the same principle with respect to a duty to aid, *i.e.*, there is no duty on the part of a storeowner to aid a customer from attack by a third person in the absence of statute or special relationship. *See also Ashburn v. Anne Arundel County*, 306 Md. 617, 510 A.2d 1078 (1986) (police officer had no duty to prevent allegedly drunk driver from injuring pedestrian); *Furr v. Spring Grove State Hosp.*, 53 Md.App. 474, 454 A.2d 414, *cert. denied*, 296 Md. 60 (1983) (psychiatrist owed no public duty to prevent harm by failing to detain patient); *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 642 A.2d 219 (1994)." *Valentine v. On Target*, 112 Md.App. 679, 686, 686 A.2d 636, 639 (1996).

As explained by Prosser and Keeton, anticipating the actions of third parties involves the consideration of a variety of factors including who the third party is likely to be or what type of conduct one is attempting to predict.

"There is normally much less reason to anticipate acts on the part of others which are those which are merely negligent, and this is all the more true where, as is usually the case, such acts are criminal. Under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the criminal law....

There are, however, other situations, in which either a special responsibility resting upon the defendant for the protection of the plaintiff, or an especial temptation and

opportunity for criminal misconduct brought about by the defendant, will call upon him to take precautions against it. The responsibility for protection may arise out of contract, by which the defendant has agreed to provide it; or it may be founded upon some relation existing between the parties, such as carrier and passenger, innkeeper and guest, invitor and business visitor, school and pupil, employer and employee, landlord and tenant, and no doubt others." (Footnotes omitted).

PROSSER AND KEETON ON THE LAW OF TORTS, *supra* at 356.

One cannot be expected to owe a duty to the world at large to protect it against the actions of third parties, which is why the common law distinguishes different types of relationships when determining if a duty exists. The class of persons to whom a duty would be owed under these bare facts would encompass an indeterminate class of people, known and unknown. When balancing the burden on the shop owner with the benefit to society at large clearly this imposition of duty would be a tremendous burden on shop owners while providing only a hypothetical benefit to the public at best. This Court does not discern in the common law the existence of a third party common law duty that would apply to these facts.

## IV.

Petitioner cites several cases from other jurisdictions in support of his argument that a duty exists under these circumstances. Upon an analysis of these cases we find that they are factually distinguishable from the situation in the case at bar. Furthermore, even if a factual analogy could be made, the legal rationale supporting the holdings in one of these cases cannot be reconciled with the longstanding jurisprudence of our State.

*Pavlides v. Niles Gun Show, Inc.*, 93 Ohio App.3d 46, 637 N.E.2d 404 (1994) is factually inapposite. There the defendants were sued for negligence by the victims of a shooting perpetrated by minors who stole the gun used in the shooting from a gun show operated by the defendants. Summary

judgment was entered against the plaintiffs from which they appealed. The Court of Appeals of Ohio reversed the trial court's granting of summary judgment in favor of the defendants, holding that there was sufficient facts alleged in the complaint to demonstrate that issues of fact needed to be resolved pertaining to whether the minor's criminal activity was foreseeable and whether defendants' conduct was willful and wanton misconduct.

The court in *Pavlides* reasoned that considering the specific facts alleged in the complaint indicating that the defendants had knowledge of thefts from prior gun shows and had knowledge of the risks associated with allowing unsupervised minors entrance to the gun show suggested that reasonable minds could conclude that the defendants should have foreseen that there existed a substantial probability that minors would be attracted to the show and would likely be lured into stealing guns. Furthermore, evidence was produced alleging that one of the gun dealers sold ammunition to one of the minor children thus bolstering the court's holding that because reasonable minds could conclude that it was foreseeable that minor children who could easily steal guns and then successfully purchase ammunition would likely use the weapon in furtherance of criminal activity therefore, granting summary judgment was inappropriate under the facts presented. *Id.*

*Berly v. D & L Security Services and Investigations, Inc.*, 876 S.W.2d, 179 (Tex.Ct.App.1994) is also factually inapposite. In that case the plaintiff's decedent was a clerk in a store which employed the defendant security guard service. The decedent was killed on the store premises by a shoplifter who was being pursued by defendant's guard. The Texas court reasoned that the guard's pursuit of the armed shoplifter increased the danger to plaintiff's decedent and others present in the store, thereby partially creating the danger to which they were exposed.

A third case cited by the petitioner in support of his argument is *Estate of Strever v. Cline*, 278 Mont. 165, 924 P.2d 666 (1996) wherein the Supreme Court of Montana affirmed a

summary judgment in favor of a gun owner whose stolen gun accidentally was fired, killing a minor child. While the Montana court held that a gun owner did owe a duty to the deceased minor to store his gun in a safe and reasonable manner, the court went on to hold that under the facts presented in the controversy that the intervening criminal acts of the deceased minor and his companions were superseding acts which prohibited liability by the gun owner for the injury.

The relevant facts consisted of the following; four boys, including the deceased minor who was the subject of the controversy, entered the defendant's unlocked truck and stole several items including a handgun that was wrapped in a paper bag and stored under the seat. After one of the boys had been smoking marijuana, he was playing with the gun and in the process caused the gun to discharge hitting another boy and fatally wounding him. The court held that the defendant owed a duty not only to the minor boys who stole the gun from his truck but also "to the public in general." *Id.* 924 P.2d at 669.

The Supreme Court of Montana partially based its holding on their abandonment of the common law distinctions between the duty owed to invitee, licensee and trespasser and instead have "adopted a uniform standard of reasonable care under the circumstances." *Id.* 924 P.2d at 670. The court reasoned that although a tortious trespass usually involves an intrusion upon land that a trespass can also be against one's personal property. Consequently, although the boys were trespassers as to the defendant's truck and his gun, the court focused its analysis on whether the defendant exercised reasonable care instead of examining what duty should be owed to the boys based on their conduct under the circumstances. In our view, this rationale shifts the entire burden of avoiding harm to one party, the land or property owner. We cannot conclude that this is a legally sound approach when analyzing whether a common law duty is owed under these facts. The legal principle that this case stands for, that a duty may exist to the public at large without any evidence of a relationship between the parties, is simply too foreign to our well-established juris-

prudence to sufficiently advocate a different result than the one we have reached.

## V.

Extending the general duty that an actor owes to exercise reasonable care to avoid causing injury to another and applying it to the facts of this case would require that this Court create a completely new cause of action in this State which we do not believe is the proper course of action under these facts. We caution that the holding in this case does not mean that a gun store owner may never be held liable to another party for negligence in the display and sale of guns when that other party is injured as a result of the negligence but rather that under the specific facts alleged in this particular case no duty was owed to this petitioner's decedent.

Our holding that a gun store owner does not owe a duty to a third person and thus can not be held liable in negligence is best explained by public policy; that although the inherent nature of guns suggests that their use may likely result in serious personal injury or death to another this does not create a duty of gun dealers to all persons who may be subject of the harm. If we would hold today that gun merchants owe an indefinite duty to the general public effectively we would be regulating the merchants. This type of regulation is the realm of the legislature and is not appropriate as a judicial enactment.

### *JUDGMENT AFFIRMED, WITH COSTS.*

Concurring opinion by RAKER, J., in which BELL, C.J., and ELDRIDGE, J., join.

Raker, Judge, concurring:

I join in the judgment of the Court affirming the trial court's dismissal of Petitioner's complaint. While I agree with the majority's reasoning with regard to the insufficiency of Petitioner's factual allegations, I take issue with those parts of the opinion which impliedly foreclose the possibility of a tort action based upon the negligence of a retail gun merchant in the keeping, display, storage, or sale of handguns.

The majority affirms the trial court's dismissal of Petitioner's complaint based on the failure to state a claim upon which relief can be granted. The majority denies relief to Petitioner on several grounds: (1) that the plaintiff failed to allege sufficient facts in the complaint upon which relief can be granted; (2) that no duty is owed to the plaintiff; and (3) that the criminal act of murder constituted an unforeseeable, intervening act that broke the chain of causation. I agree with the first conclusion, but respectfully disagree with the majority's view that no duty is owed to the plaintiff, as well as its intimation that the theft of a handgun from a retail gun store, and the subsequent criminal misuse of that handgun are not foreseeable as a matter of law.

The majority stresses in several parts of its opinion that the rationale and decision in this case are limited to the facts presented, insufficient as they are. For instance, in the introductory paragraph, the majority states:

> *Confining our analysis to the well pleaded facts* in the complaint filed by petitioner in the instant case, the issue is properly limited to the determination of whether respondent owed a duty to the petitioner's decedent. We hold that such a tort duty is not cognizable *under those facts* . . . .

Maj. op. at 547 (emphases added). The majority further writes, "We focus our attention then on the question of whether the respondent owed a duty to the petitioner's decedent *under the facts of the instant case.*" Maj. op. at 550 (emphasis added). Shortly thereafter, in rejecting the assertion that the theft and criminal misuse of the handgun in the present case were foreseeable, the majority concludes, "Petitioner does not allege any facts to support his claim . . . ." Maj Op. at 551. The majority later states,

> The class of persons to whom a duty would be owed *under these bare facts* would encompass an indeterminate class of people, known and unknown. . . . This Court does not discern in the common law the existence of a third party common law duty *that would apply to these facts.*

**558**

Maj. op. at 553 (emphases added). Lastly, the majority's final section, Part V., begins as follows:

> Extending the general duty that an actor owes to exercise reasonable care to avoid causing injury to another *and applying it to the facts of this case* would require that this Court create a completely new cause of action in this State which we do not believe is the proper course of action *under these facts*.

Maj. op. at 556 (emphases added).

Despite these explicit and purposeful limitations, other portions of the majority opinion are painted, in my estimation, with too broad a brush. Most notably, the Court's concluding paragraph, Maj. op. at 556, proclaims:

> Our holding that a gun store owner does not owe a duty to a third person and thus can not be held liable in negligence is best explained by public policy; that although the inherent nature of guns suggests that their use may likely result in serious personal injury or death to another this does not create a duty of gun dealers to all persons who may be subject of the harm. If we would hold today that gun merchants owe an indefinite duty to the general public effectively we would be regulating the merchants. This type of regulation is the realm of the legislature and is not appropriate as a judicial enactment.

These final thoughts, not limited to the facts of the present case, may be the most lasting impression of the Court's decision today. Lest they be misunderstood as declaring victims of handgun violence in Maryland to be barred from suing retail handgun merchants for their negligent handling of their handgun inventory, I write to suggest that the majority's opinion should not be read to mitigate or mute what the Court has announced in concluding its penultimate paragraph:

> We caution that *the holding in this case does not mean that a gun store owner may never be held liable to another party for negligence* in the display and sale of guns when that other party is injured as a result of the negligence *but*

*rather that under the specific facts alleged in this particular case no duty was owed* to this petitioner's decedent.

Maj. op. at 556 (emphases added). To my mind, this singular sentence comprises the Court's most significant ruling.

I would affirm the Court of Special Appeals on the very narrow ground that the complaint fails to state any facts, beyond bald and conclusory allegations, that Respondent breached a duty of due care to Petitioner in this case. *See* Maryland Rule 2–303(b) (A pleading shall contain statements of fact necessary to show pleader's entitlement to relief); *Scott v. Jenkins*, 345 Md. 21, 28, 690 A.2d 1000, 1003 (1997) ("[A]ny claim for relief based upon an alleged tort, intentional or non-intentional, must allege facts, if proven true, sufficient to support each and every element of the asserted claim.").

Writing for the Court of Special Appeals, then Chief Judge Wilner, now a member of this Court, pointed out that the complaint gives no details as to how McLeod and his confederate managed to steal the guns, how the guns were stored, what precautions Respondent had taken to secure the guns, or how the theft occurred. *Valentine v. On Target*, 112 Md.App. 679, 682, 686 A.2d 636, 637 (1996). Moreover, the complaint does not indicate whether McLeod was an unaccompanied minor, *id.* at 689, 686 A.2d at 641, nor what Respondent did or did not do to prevent the theft, *id.*, 686 A.2d at 641, nor what more Respondent could or should have done. *Id.* at 691, 686 A.2d at 641. The intermediate appellate court therefore emphasized that "[t]o extend liability to the general public *on these facts, or lack of them,* would effectively create a doctrine of absolute liability...." *Id.*, 686 A.2d at 641.

For the reason—and only for the reason—that Petitioner failed to sufficiently plead the facts necessary to state a cause of action in negligence against Respondent, I would affirm the judgment dismissing the complaint. Because, however, the majority opinion ventures beyond that which is necessary to decide the instant case, I feel compelled to respectfully dissent from its reasoning beyond the issue of factual insufficiency.

In weighing the burden on the retail gun merchant against the benefit to the public at large, the majority reasons that the scale shifts towards no liability. Maj. op. at 553. The majority concludes that to rule otherwise would unfairly shift the entire burden of avoiding harm and establishes an indefinite duty of care on handgun shop merchants. The majority bases this decision on a finding that a duty of ordinary care to protect against theft is not, as a matter of law, owed by a gun store owner in the displaying of firearms held out to the public for sale. The majority also implies that, even if a duty existed, proximate causation between the defendant's actions and the plaintiff's injuries was, as a matter of law, broken by the intervening criminal acts of a third party. Maj. op. at 549–50. Although, again, I would leave for another day the question of whether a retail handgun merchant can be liable in tort where the merchant fails to exercise reasonable care in the security of handguns held out for sale to the public, I note my disagreement with the broad policy statements set forth by the majority.

I believe that retail handgun merchants owe a legally recognized duty to exercise ordinary care in securing handguns held out for public sale and that, as a matter of law, the chain of causation is not necessarily broken by intervening criminal acts. The imposition of tort liability upon the merchant would not shift the entire burden of preventing harm onto a gun store owner, nor would it establish an "indefinite duty," as the majority ominously predicts. Instead, it would merely impose upon a store owner a duty to exercise ordinary care in the storage and display of handguns held out for sale to the public.

Under our current tort jurisprudence, does the defendant have a legally recognized duty to secure its guns to prevent theft? Duty, in negligence cases, has been defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Ashburn v. Anne Arundel County,* 306 Md. 617, 627, 510 A.2d 1078, 1083 (1986) (quoting W. PAGE KEATON, PROSSER AND KEATON ON TORTS § 53, at 356 (5th ed.1984)). Since, in the absence of a statutory duty, a special relationship ordinarily

must exist between the plaintiff and the defendant at the time the plaintiff is injured by the criminal acts of a third party for liability to attach, *see Scott v. Watson*, 278 Md. 160, 166, 359 A.2d 548, 552 (1976), the majority correctly focuses on foreseeability as the determining factor for whether a duty of care exists. *See Jacques v. First Nat'l Bank*, 307 Md. 527, 534–35, 515 A.2d 756, 759–60 (1986) (stating that where failure to exercise due care creates risk of personal injury, "the principal determinant of duty becomes foreseeability."). *See also Matthews v. Amberwood*, 351 Md. 544, 560–61, 719 A.2d 119, 127 (1998); *Village of Cross Keys v. U.S. Gypsum*, 315 Md. 741, 752–53, 556 A.2d 1126, 1131 (1989). In my opinion, the theft of a handgun, left unsecured and easily accessible, is foreseeable, as is the definitive possibility that a stolen handgun will be used in violent crime, and thus, a duty exists.

The foreseeability test is "simply intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm. . . ." *Henley v. Prince George's County*, 305 Md. 320, 334, 503 A.2d 1333, 1340 (1986). If a plaintiff can prove that the theft of a handgun from a retail shop, as well as the subsequent, violent, criminal misuse of the stolen handgun were foreseeable, and not "highly extraordinary," then a duty exists to a foreseeable plaintiff on the part of the retail merchant to secure handguns for sale to the public. *See* RESTATEMENT (SECOND) OF TORTS § 435(2) (1965) (stating that attachment of liability may be avoided where it appears highly extraordinary that defendant's negligent conduct should have brought about the harm (cited in *Henley*, 305 Md. at 334, 503 A.2d at 1340)). I therefore disagree with the majority's conclusion that, as a matter of law, neither the theft nor the criminal misuse of the firearm was foreseeable. *Cf. Matthews*, 351 Md. at 560–63 and n. 4, 719 A.2d at 127–28 and n. 4 (imposing liability on landlord for fatal attack by tenant's pit bull on sixteen-month old child based in part on foreseeability of attack which was partly demonstrable by numerous legislative efforts to control or ban pit bull breed widely known for viciousness and aggression).

Estimates for the number of guns stolen each year vary greatly. Some authorities put the figure somewhere between 65,000 and 225,000 guns annually,[1] while others estimate that as many as 1,800,000 guns are stolen per year.[2] Whatever the exact figure, the theft of a handgun is clearly not uncommon. This fact is significant because it is well known that stolen handguns are an important source of supply to the criminal population. *See* JAMES D. WRIGHT & PETER H. ROSSI, ARMED AND CONSIDERED DANGEROUS 184, 193, and 196 (Expanded Edition 1994). Stolen guns are particularly attractive to people who intend to commit violent crimes with handguns because they are untraceable, an important characteristic to felons, and enjoy a potentially quick turnover. THE ANNALS OF THE AMERICAN ACADEMY OF POLITICAL AND SOCIAL SCIENCE, GUN CONTROL 100 (Philip J. Cook ed., 1981) (hereinafter, "GUN CONTROL"). Moreover, under federal and state law, felons are unable to buy handguns legitimately from a licensed retail merchant. *See* 18 U.S.C. § 922(g)(1) (criminalizing possession by person, convicted of crime punishable by term of imprisonment of more than one year, of firearm in or affecting interstate commerce); Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.) Article 27, § 442(h)(2)(i)(2) (precluding person convicted of felony from purchasing regulated firearm from licensed dealer). Consequently, felons steal handguns or buy them "off the street." *See* JOSEPH F. SHELEY & JAMES D. WRIGHT, NATIONAL INSTITUTE OF JUSTICE, GUN ACQUISITION AND POSSESSION IN SELECTED JUVENILE SAMPLES 6 (December 1993).

As Professors Wright and Rossi summed up in their well-known study of convicts and handgun use, "at least four-tenths, and possibly as much as seven-tenths, of the most recent handguns possessed by [these convicts] were stolen weapons." WRIGHT & ROSSI, *supra*, at 207. Surveying over 1800 inmates in ten states about their guns, the professors found that 32% of the felons who possessed handguns when

---

**1.** *See* THE ANNALS OF THE AMERICAN ACADEMY OF POLITICAL AND SOCIAL SCIENCE, GUN CONTROL 100 (Philip J. Cook ed., 1981).

**2.** *See* GARY KLECK, TARGETING GUNS: FIREARMS AND THEIR CONTROL 92 (1997).

sent to prison had obtained their most recently acquired handgun by stealing it. *Id.* at 184. Another recent study deduced that theft is "probably the primary way that guns are transferred from the less criminal segments of the population to the more criminal segments." GARY KLECK, TARGETING GUNS: FIREARMS AND THEIR CONTROL 91 (1997). Professor Philip J. Cook, in his 1981 study on gun control, concluded that there "is a strong presumption that virtually all stolen guns end up in the hands of proscribed or dangerous people." GUN CONTROL, *supra,* at 100.

The attraction of a stolen handgun to those individuals likely or intending to commit a crime is obvious. As Wright and Rossi stated,

> A stolen firearm ... can only be traced back to the last legal owner if the gun is subsequently used in a crime.... [U]ntraceability is an important characteristic that felons look for in handguns, and stolen guns fit that definition very well. Even when other sources of supply are available, it is easy to see that there might be a preference among criminals for stolen equipment.

WRIGHT & ROSSI, *supra,* at 193. This idea has been echoed by other commentators: "Stolen guns are particularly attractive to people who intend to commit violent crimes with guns because they are virtually impossible to trace." GUN CONTROL, *supra,* at 100. The notion that it is not foreseeable that a stolen handgun will be used in violent crime is simply nonsense.

Policy considerations are important in deciding whether a duty of care exists. The relevant policy considerations include (1) the moral blame attached to the defendant's conduct, (2) a desire to prevent future harm, (3) the extent of the burden on the defendant and the consequences to the community of imposing a duty to exercise care, and (4) the availability, cost and prevalence of insurance. *See Village of Cross Keys,* 315 Md. at 752, 556 A.2d at 1131 (citing *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976)). Accordingly, in a case involving the

death of a minor shot with a gun stolen from the unlocked truck of the defendant, the Montana Supreme Court found that the existence of a duty of care on the part of the original gun owner depends upon "the foreseeability of the risk and upon a weighing of policy considerations for and against the imposition of liability." *Estate of Strever v. Cline*, 278 Mont. 165, 924 P.2d 666, 670 (1996) (citation omitted).

The federal government and the State of Maryland have enacted elaborate statutory schemes designed to regulate the transfer of handguns. Passed by Congress in 1968, the Omnibus Crime Control and Safe Streets Act, among other things, prohibits possession of all firearms in or affecting interstate commerce by persons with a felony conviction. *See* 18 U.S.C. § 922(g)(1). The General Assembly has likewise restricted the purchase, rental, or transfer of regulated firearms to certain classes of persons. Article 27, § 442. The purpose of this legislation is to control and, if possible, eliminate gun violence. As discerned by this Court, it has been the public policy of this State, and the "dominant purpose" of the Legislature's enactment of Article 27, § 36B,[3] "to stop the alarming rise in the use of handguns in the commission of crimes of violence." *Dillon v. State*, 277 Md. 571, 584, 357 A.2d 360, 368 (1976) (citation omitted). *See also Eldridge v. State*, 329 Md. 307, 313, 619 A.2d 531, 534 (1993) (reiterating in reference to the passage of § 36B in 1972 "that the Legislature[,] spurred by a dramatic increase in the number of crimes perpetrated with handguns and a concomitant increase in the number of deaths and injuries caused by persons carrying handguns on the streets who were inclined to use them in criminal activity, enacted strong handgun control legislation." (internal quotation marks and citations omitted)). Accordingly, the State has a strong interest in preventing theft of handguns by those persons that are ineligible to buy guns.

In Maryland, a person may not legally purchase a firearm unless that person is at least 21 years of age, Article 27,

---

**3.** Article 27, § 36B proscribes the wearing, carrying, or transporting of a handgun, and the use of a handgun in the commission of crime.

§ 442(h)(2)(vi), and has not been convicted of a crime of violence, a felony or a misdemeanor that carries a statutory penalty of more than two years. *Id.* at (h)(2)(i)(1)–(3). The purchaser of a firearm may not be a fugitive from justice, a habitual drunkard or an addict or habitual user of any controlled dangerous substances. *Id.* at (h)(2)(ii)–(iv). Finally, the purchaser cannot have spent more than thirty consecutive days in any medical institution for treatment of a mental disorder unless certified by a physician as capable of safely possessing a firearm, *id.* at (h)(2)(v), nor be a respondent against whom a current non ex parte civil protective order has been entered under § 4–506 of the Family Law Article (1984, 1999 Repl.Vol.) of the Maryland Code. *Id.* at (h)(2)(vii). In addition, a gun owner in Maryland who fails to secure adequately a firearm in a manner which would reasonably prevent possession by an unsupervised minor is subject to criminal liability. *See* Article 27, § 36K.[4] In weighing the benefits against the burdens, dealers faced with the prospect of liability in tort for negligent storage of handguns will be more careful in the storage of those guns held out for sale to the general public. *Cf.* Markus Boser, Note, *Go Ahead, State, Make Them Pay: An Analysis of Washington D.C.'s Assault Weapon Manufacturing Strict Liability Act,* 25 COLUM. J.L. & SOC. PROBS. 313, 337 (1992) (arguing that firearms dealers faced with prospect of unlimited liability from stolen handgun have additional incentive to prevent theft, and would guard inventory much more carefully than if simply protecting stock).

Interwoven in its conclusion that no duty existed, the majority also essentially concludes that Respondent's actions (or

---

**4.** Article 27, § 36K provides, in pertinent part, as follows:

(b) *Prohibited acts*—[A]n individual may not store or leave a loaded firearm in any location where the individual knew or should have known that an unsupervised minor would gain access to the firearm.

\* \* \* \* \* \*

(e) *Penalty.*—Any person who violates this section is guilty of a misdemeanor and upon conviction shall be fined not more than $1,000.

inactions) are not the proximate cause of the injuries of Petitioner's decedent. Maj. op. at 549–50. I disagree. Generally, intervening acts of third parties will sever the chain of causation necessary to find negligence. If, however, the intervening negligent act was foreseeable, the original negligent actor is not freed from liability. *See Matthews*, 351 Md. at 578–79, 719 A.2d at 135–36; *BG & E v. Lane*, 338 Md. 34, 52, 656 A.2d 307, 316 (1995) ("[T]he intervening negligence is not a superseding cause if it is reasonably foreseeable."); *Penn. Steel Co. v. Wilkinson*, 107 Md. 574, 581–82, 69 A. 412, 414–15 (1908). As we reiterated last term in *Matthews*:

> If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.

351 Md. at 578, 719 A.2d at 135–36 (quoting *State v. Hecht Company*, 165 Md. 415, 422, 169 A. 311, 313 (1933); *Lane*, 338 Md. at 52, 656 A.2d at 315; *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 160, 642 A.2d 219, 231 (1994); *Atlantic Mutual v. Kenney*, 323 Md. 116, 131, 591 A.2d 507, 514 (1991). *See also Robertson v. Sixpence Inns of America*, 163 Ariz. 539, 789 P.2d 1040, 1047 (1990); *Godesky v. Provo City Corp.*, 690 P.2d 541, 545 (Utah 1984)).

By the same token, the intervening criminal actions of another would not supersede the original negligence so long as they were foreseeable; for the crux of the matter is the foreseeability of those acts, not the level of intent with which they were conducted. As declared in the second restatement of the law of torts:

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the [original] actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the [original] actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

RESTATEMENT (SECOND) OF TORTS, *supra*, § 448.

For all the reasons stated above, I cannot join in the majority's view that there is no duty upon retail gun store owners to exercise reasonable care in securing handguns held out for sale to the public. I believe that the policy concerns cry out loudly in favor of recognizing a duty to the foreseeable plaintiff on the part of retail handgun sellers to exercise reasonable care in conducting their business so as to avoid the theft and subsequent criminal misuse of handguns.

Chief Judge BELL and Judge ELDRIDGE have authorized me to state that they join in the views expressed herein.